# Trustees of the Philadelphia Museums, Appellants, *v.* Trustees of the University of Pennsylvania.

*Municipalities—Conveyance of land—Alleged invalidity—Parties
—Standing—Administrative boards—United States—Dedication—
Acceptance—Equity.*

1. Where a municipality created a board of trustees as its admin-
istrative agent for the management of a museum and the land on
which the museum buildings were erected, the board had no stand-
ing to question the right of the city to convey away the property
in the absence of a clear intent manifested by any of the ordinances
relating to the board to create a separate and distinct entity as the
depository of the legal title, and in the absence of any deed or other
transfer executed by the proper city authorities and delivered to
the board, particularly where it appeared that the city had from

time to time leased portions of the property at yearly rentals which were paid to the city and not to the board, and had previously conveyed other portions of the tract for a sum which was paid to the city, not to the board.

2. Where pursuant to the Act of April 25, 1903, P. L. 314, authorizing cities to establish institutions for the purposes therein stated with the power to purchase or accept by gift real or personal property, an ordinance conferred upon such board of trustees authority to take and hold real or personal property for the purposes comprised in the object of its creation with the powers and subject to the restrictions prescribed by the act, but did not otherwise change the status of the board, or provide that a transfer of the property in question should be made to it, the status of the board with respect to the property in question remained unchanged, and the board was merely the administrative agent of the city for the management thereof.

3. Where in such case it appeared that the United States government had appropriated a large sum of money to aid in providing buildings necessary for the purposes of a commercial exposition which was to be held upon the property, with a further provision that after the close of the exposition, the buildings should be available for a municipal museum, the main purpose of the appropriation by the federal government was to assist in financing the commercial exposition and to encourage and stimulate export trade, and after the exposition was held and a number of the buildings had been taken down and removed, leaving only certain buildings which were occupied by the museum, the United States government had no standing to object to the conveyance of the property for private purposes to a private corporation.

4. A dedication of real estate to public uses does not become binding upon the dedicator until there has been an acceptance on the part of the public. Dedication is the joint effect of the offer by the owner to dedicate land and acceptance of such land by the public. Two parties are necessary, the owner on one side and the public on the other. This rule is applicable where a dedication is attempted to be made by a municipality. The passage of a municipal ordinance setting the land apart for public uses, either as a park, or otherwise, is a mere offer to dedicate, which becomes binding only by acceptance and use by the public for the purposes stated.

5. Where a municipal ordinance purported to dedicate certain property to the public for the purposes of a park and thereafter museums were erected upon part of the property and used by the public, and other portions of the property were never opened for park purposes, but were either leased to tenants at a stipulated rental, or used by the public as a dumping ground, there was no

such use of such other portions of the ground by the public as to constitute an acceptance of the dedication thereof, and a bill in equity to set aside a conveyance to a private corporation of those portions of the property which had never been used by the public for park purposes was properly dismissed.

Argued Feb. 1, 1915.   Appeals, Nos. 384 and 387, Jan. T., 1914, by the Board of Trustees of the Philadelphia Museums, and the United States of America, from decree of C. P. No. 1, Philadelphia Co., June T., 1912, No. 612, dismissing exceptions to report of master, in case of Board of Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania and the City of Philadelphia.   Before BROWN, C. J., MESTREZAT, POTTER, ELKIN, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity to set aside a conveyance and for the cancellation of a deed.

Exceptions to the report of Samuel M. Hyneman, Esq., Special Master.

The opinion of the Supreme Court states the facts. See Trustees of the Philadelphia Museums v. Trustees of the University of Pennsylvania, et al., 251 Pa. 115.

The court dismissed the exceptions.   The Board of Trustees of the Philadelphia Museums, and the United States of America, appealed.

*Error assigned* was in dismissing the exceptions.

*Thomas O. Peirce* and *William A. Glasgow, Jr.,* with them *John H. Hall,* Assistant United States District Attorney, and *Francis Fisher Kane,* United States District Attorney, for appellant.—The Board of Trustees of the Philadelphia Museums is a body possessing corporate powers, independent of the City of Philadelphia, and has a legal standing to bring this action against the City of Philadelphia and the Trustees of the University of Pennsylvania for the protection of the trust property: Med-

ical College of Philadelphia's Case, 3 Wharton 445; Durach's App., 62 Pa. 491; Locke's App., 72 Pa. 491; Laird v. Pittsburgh, 205 Pa. 1; Cary Library v. Bliss, 151 Mass. 364 (25 N. E. Repr. 92).

The United States of America is interested in the matter in controversy because of its contribution of the sum of $300,000 for the erection of buildings on the land involved: Mills v. Davison, 54 N. J. 659 (35 Atl. Repr. 1072); Chambers v. Baptist Education Society, 40 Ky. 215; Baptist Church v. Presbyterian Church, 58 Ky. 635.

The unimproved lands, as well as the improved, were perpetually and irrevocably dedicated to a public use and could not be conveyed to the University of Pennsylvania: Attorney General v. Tarr, 148 Mass. 309 (19 N. E. Repr. 358); Little Rock v. Wright, 58 Ark. 142 (23 S. W. Repr. 876); Shirk v. Chicago, 195 Ill. 298 (63 N. E. Repr. 193); Mayor & City Council of Baltimore v. Broumel, 86 Md. 153 (37 Atl. Repr. 678); Board of Sup'rs of Harrison County v. Seal, 66 Miss. 129 (5 So. Repr. 622); State v. Atherton, 16 N. H. 203; Eureka v. Gates, 137 Cal. 89 (69 Pac. Repr. 850); London & San Francisco Bank v. City of Oakland, 90 Fed. Repr. 691; Heitz v. City of St. Louis, 110 Mo. 618 (19 S. W. Repr. 618); City of Sullivan v. Tichenor, 179 Ill. 97 (63 N. E. Repr. 561); Simons v. Cornell, 1 R. I. 519; Logan v. Rose, 88 Cal. 263 (26 Pac. Repr. 106); Ellis v. City of Hazelhurst, 138 Ga. 181 (75 S. E. Repr. 99); Town of Derby & Birmingham Boro. v. Alling, 40 Conn. 410; McHugh v. Town of Minocqua, 102 Wis. 291 (78 N. W. Repr. 478); Taraldson v. Town of Lime Springs, 92 Iowa 187 (60 N. W. Repr. 658); Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318.

*John C. Bell* and *John G. Johnson,* with them *Henry S. Drinker, Jr., J. Levering Jones* and *Samuel Dickson,* for appellees.

OPINION BY MR. JUSTICE FRAZER, October 28, 1915:

These appeals are by the Trustees of the Philadelphia Museums and the United States of America from the decree of the lower court holding the former was not an entity separate from the government of the City of Philadelphia, and the latter had no such interest in the controversy as would entitle it to question the action of the municipality in disposing of the property in question. The facts are fully stated in the preceding case.

Under the ordinance of June 15, 1894, and subsequent ordinances, the Board of Trustees of the Philadelphia Museums is a mere administrative agent of the city and has no standing to question the right of the city to deal with the property placed under its direction and control. There is no clear intent manifested by either of the ordinances to create a separate and distinct entity nor is such intent shown by the subsequent acts of the city in dealing with the property. No deed or other transfer was executed by the proper city authorities and delivered to the board. On the contrary, however, a part of the property in question was for a time leased to a third person by the city, at a yearly rental, which was paid to the city and not to the board and which lease was assigned to the University of Pennsylvania following the deed of the property to that institution. The city also, by deed of December 29, 1906, conveyed to the Pennsylvania Railroad Company a right of way over a portion of the tract for the consideration of $80,000, which sum was paid to the city and not to the Board of Trustees of the Museums. The ordinance of June 15, 1894, also indicated an intent on the part of the city to retain control of the property by the fact that the museums board was composed principally of city officials with the provision that vacancies occurring among those not officials should be filled by the mayor, subject to confirmation by select council. While it is true the subsequent ordinances were somewhat inartistically drawn and purport "to convey" the property to the board of trustees, a con-

sideration of the ordinances as a whole and the acts done pursuant thereto, and of the fact that no actual conveyance was ever made, convince us that there was no intention to actually establish a separate and independent body in which the ownership of the property might vest.

The status of the board is similar to that of the Carnegie Free Library Board in Laird v. Pittsburgh, 205 Pa. 1, which was composed of the mayor of the city, presidents of select and common councils, president of the central board of education and five other members, appointed by councils to act in conjunction with certain others appointed by the donor. This board had charge of the expenditure of all funds donated by individuals or the city for library purposes and permission of the city was asked for the use of a portion of a public park for the erection of a proposed new library building. In connection with this location it was necessary to condemn certain property belonging to plaintiff, who contended the city could not exercise the power of eminent domain in taking land for the purpose intended, for the reason, inter alia, that the institution was not under the control of the city. In overruling this contention, this court, by Mr. Justice MITCHELL, said (p. 7), "The further objection that the city cannot take this land because the Carnegie Free Library is not under the control of the city, and its property is distinct from that of a public park, is also untenable. The city takes and keeps the title and control of the land, though it commits the ordinary management, what may be called the police administration, to a board of directors in which it has, by election and ex officio, a representation of one-half. This is not a taking of the property for a private institution." The court below was right in holding that the present board of trustees is merely an administrative board of the city government.

The status of the board of trustees, with relation to the title of the property, was not changed by the ordinance of March 24, 1904, passed pursuant to the Act of

April 25, 1903, P. L. 314, authorizing cities to establish institutions for the purposes therein stated, with power to purchase or accept by gift, real or personal property, etc. The ordinance referred to merely conferred upon this board authority to take and hold real or personal property for the purposes comprised in the object of its creation with the powers and subject to the restrictions prescribed by the Act of 1903, but made no other change in the status of the board, nor did it provide that a transfer of the property in question should be made to it. So far as this act and this ordinance are concerned the status of the board, with respect to the property in question, remained unchanged.

The United States government is equally without standing to contest the action of the city in conveying this property. The appropriation of $300,000 was made to the Philadelphia Exposition Association to aid in providing buildings necessary for the purposes of the exposition, with a further provision, that, after the close of the exposition, the buildings should be available for the purposes of the Philadelphia Museums. A number of the buildings, for the construction of which this fund was used, were taken down and removed from this property immediately after the close of the exposition, leaving standing only the chief buildings, which are now occupied by the museums. The main purpose of the appropriation by the federal government, was to assist in financing the exposition and encourage and stimulate export trade. Indirectly the fund was to benefit the Philadelphia museums, after it had discharged its primary purposes. There has been no attempt to divert the museum buildings to any other purpose than that for which they were constructed, and, therefore, the United States government has not been injured, nor is it threatened with injury. Presumably if a new location were obtained the museum would be removed to such place and in that way the purpose of the gift carried out.

The only other question involved in this appeal is the

action of the court below in holding that, as various other tracts of land which were not included in what is referred to as the museums tract ("A" and "B" or "University of Pennsylvania Tract No. 3") had never been improved or used for the purposes intended, the dedication was never accepted, and the city was not estopped from repealing the ordinance and otherwise disposing of the property. It appears from the report of the special master, that one of these tracts had been opened for a public dumping ground and no effort was made by either the city or the trustees of the museums toward the creation of a botanical and economic garden. A part of another tract was leased in 1902 by the city to John A. Barry for a term of ten years at a stipulated rental. This lease was subsequently assigned to the University of Pennsylvania, which institution thereafter collected the installments of rent payable thereunder as they became due. Part of the property was also used as a storage yard and the Pennsylvania Railroad Company was granted a right of way over a part. At no time was money expended by the city or the trustees or by the public in improving this portion of the land or any part of it, for the purposes stated in the ordinance of dedication. A dedication to public uses does not become binding upon the dedicator until there has been an acceptance on the part of the public. Dedication is the joint effect of the offer of the owner to dedicate land and acceptance of such land by the public. Two parties are necessary, the owner on one side and the public on the other; there can be no dedication without the participation of both: Los Angeles v. Kysor, 125 Cal. 463. This is the general rule applicable to a dedication by a private individual, and there seems to be no good reason why the rule is not applicable to a dedication made by a municipality. Where the individual has made the dedication and no one has acted upon the offer, in such manner that he may be injured by its revocation, the former may revoke even though there has been an actual dedication and not a mere offer. The question

then becomes one of estoppel: Schmitt v. City & County of San Francisco, 100 Cal. 302. The city stands in the same position as an individual. Where the city is the owner of ground, the passage of an ordinance, setting it apart for public uses, either as a park or otherwise, is a mere offer to dedicate which becomes binding only by acceptance and use by the public for the purposes stated: City & County of San Francisco v. Calderwood, 31 Cal. 585; San Francisco v. Canavan, 42 Cal. 541; People v. Williams, 64 Cal. 498. In the case last cited it was said "The passage of an ordinance, setting apart and dedicating a portion of the water front in a harbor for public use as a free public dock for ships is, said the late Supreme Court, a mere offer-to dedicate, and the dedication is not complete, nor does the public acquire any right to the easement, until it has been accepted and used by the public in the manner intended."

In the case of Attorney General v. Tarr, 148 Mass. 309, relied upon by appellants, as supporting a contrary rule, there was sufficient evidence of actual usage by the public to constitute an acceptance of the dedication and the decision was based upon this ground. The language of the court to the effect that when a dedication was made by the town its acceptance was necessarily implied from the act of dedication is dictum. To hold that the passage of an ordinance of dedication forever precludes the municipality from using property for other purposes regardless of circumstances which might render it useless or undesirable for the purposes stated in the ordinance of dedication, would impose an unnecessary burden on the public without any corresponding advantage to any one.

What we have said is not intended in any way to conflict with the opinion of the lower court in Pittsburgh v. Epping-Carpenter Co., 194 Pa. 318, which was affirmed by this court. Acceptance of an offer to dedicate need not be made at once, nor of the whole tract. Acceptance of a part of a tract may be of such nature as to indicate an intention to ultimately use the whole for

public purposes. This must necessarily be a question of fact to be determined in view of the circumstances of each case—such as the nature of the use made of part and the condition and location of other parts. In the present case, the remaining tracts do not adjoin the museum tract, and were as matter of fact dedicated for other purposes, to wit, the establishment of a botanical garden and park. No attempt has ever been made to use the land for these purposes, and as the dedication was not for museum purposes, there seems to be no ground for holding that the use of the museum tract constituted an acceptance of the other tracts.

Both appeals are dismissed.