MARY JOHNSON, Respondent, *v.* CITY OF NIAGARA FALLS, Appellant.

Highway Law — dedication of streets — when dedication of street and alleged acceptance thereof insufficient — when city not liable for accident caused by defective street.

1. Streets and roads dedicated by individuals to public use but not adopted by the local public authorities or declared highways by statute, are not highways within the meaning of the highway acts; and there is no law by which any one can be compelled to keep them in repair. The mere fact that a portion of the public had traveled over a road for twenty years would not make it a highway; but the user must be like that of highways in general and the road must not only be traveled upon but it must be kept in repair, taken in charge and adopted by the public authorities.

2. Where a lane, connecting two public highways and crossing the tracks of two railroads, which had been used more or less by the public as a highway, was dedicated by the owners of the abutting lands, part of which had been subdivided into building lots, to an adjacent city and such city formally accepted as a public street that part of the lane which laid south of the railroad tracks and had it recorded as a street, but no further action was taken by the city authorities or the owner of the land abutting on the north part of the lane except that the owner thereof subdivided it into lots and made and filed a map thereof in the office of the county clerk and in the office of the assessors of the city, such acts, although operating as a dedication of the so-called street, so far as affects its use by the purchasers of lots thereon, did not constitute a sufficient dedication, and acceptance thereof, to the public use.

3. Evidence that by direction of the superintendent of the streets or his assistant, an employee of the city on two occasions drew several loads of crushed stone and filled some holes in the roadbed of the so-called street are not sufficient to show that the city intended thereby, even if knowledge thereof was shown in the city authorities, to accept the street and become responsible for its maintenance, particularly when it is shown by general proof that the owner of the land abutting on the so-called street kept it in repair prior to and after the accident.

4. Although the city assessors, after the filing of the map of the so-called street, assessed the abutting land by the lot numbers shown on the map and the assessment roll was confirmed by the common

council, such assessment did not constitute an acceptance of the dedication, nor is the fact that the streets, as shown on the map in question, were not included in the assessment for purposes of taxation sufficient to show that they were accepted by the city. (*People* v. *Underhill*, 144 N. Y. 316, followed.)

*Johnson* v. *City of Niagara Falls*, 184 App. Div. 923, reversed.

(Argued October 18, 1920; decided November 23, 1920.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 22, 1918, affirming a judgment in favor of plaintiff entered upon a verdict.

In May, 1913, the plaintiff was seated in a wagon drawn by one horse which she was driving westerly along Niagara Falls boulevard toward the city of Niagara Falls. When she arrived at the easterly line of the city she turned southerly over a so-called street referred to as Evershed street, and proceeded southerly thereon. When midway between the boulevard and a railroad crossing her horse stepped into a hole in the westerly half of said so-called street, and it resulted in the plaintiff being thrown from the wagon. She thereby received injuries to recover damages for which this action was brought. The plaintiff obtained a judgment at the Trial Term entered upon the verdict of a jury which judgment has been affirmed by the Appellate Division of the fourth department. KRUSE, Presiding Justice, dissented "upon the ground that the *locus in quo* is not a public highway so as to charge the defendant with the duty of maintenance thereof." (*Johnson* v. *City of Niagara Falls*, 184 App. Div. 923.) On the appeal to this court the appellant asserts and correctly, that the only question presented is whether the place where the plaintiff was traveling at the time of the accident had been accepted as a highway by the city of Niagara Falls. Other facts, so far as material, are stated in the opinion.

*Robert J. Moore, Corporation Counsel,* for appellant. Even though a portion of the public may have traveled over the road for a period of twenty years or more this does not make it a public highway. (*Spier* v. *Town of Utrecht,* 121 N. Y. 420; *People* v. *Underhill,* 144 N. Y. 316; *Smith* v. *Smythe,* 197 N. Y. 457; *Matter of Wallace Avenue,* 222 N. Y. 139; *Cook* v. *Harris,* 61 N. Y. 448; *City of Cohoes* v. *D. & H. C. Co.,* 134 N. Y. 397; *People* v. *Loehfelm,* 102 N. Y. 1; *Riley* v. *Brodie,* 22 Misc. Rep. 374; *McCutcheon* v. *Terminal Station Com.,* 88 Misc. Rep. 602; *F. & M. Savings Bank* v. *City of Lockport,* 89 Misc. Rep. 157; *Hamilton* v. *Owego,* 42 App. Div. 312; *N. F. Suspension Bridge Co.* v. *Bachman,* 66 N. Y. 261.) The filling of holes in the road by a mere employee of the city did not constitute acceptance by the municipality. (*L. & H. R. R. Co.* v. *Vil. of Warwick,* 164 App. Div. 55; *People* v. *Underhill,* 144 N. Y. 316.)

*Glenn A. Stockwell* and *William J. Watts* for respondent. The public authorities of the city of Niagara Falls adopted Evershed street, took it in charge and kept it in repair. (*Cook* v. *Harris,* 61 N. Y. 448; *People* v. *Loehfelm,* 102 N. Y. 1; *McVey* v. *City of Watertown,* 92 Hun, 306.)

CHASE, J.   There are two main thoroughfares running easterly and then southerly from the city of Niagara Falls to and through the village of La Salle. They are substantially parallel with the Niagara river. The one nearest the river, called the " River road," is now known as Buffalo avenue. The other, which is about one mile from the river, called the " Mile Line road," is now known as Niagara Falls boulevard. The land between the river and the Mile Line road is known as the New York State Mile Reserve. The easterly line of the city of Niagara Falls is the westerly line of the village of La Salle and the line between lots 49 and 50 of a division of said New York State Mile Reserve. Said lots were formerly

owned by one man and he, for farming and other purposes, traveled along the division line of said lots from the River road to the Mile Line road and the way was indicated by wagon wheel tracks worn in the grass.  It was known as a lane and the owner cultivated the land on either side of such lane and cut the hay that grew on the fields including said lane.  Subsequently lot 49 was acquired by one Howard and lot 50 by one Bowen and both continued for years to use such farm lane and gates were placed at either end thereof.  The gates were abandoned several years before the accident.  The lane was used also by neighbors and in time by any one desiring to use the same.  A right of way was acquired many years ago by the New York Central Railroad Company between said two main highways.  It is parallel to the main roads and crosses the lane or so-called street at right angles about 1,500 feet northerly of the River road. The right of way of the Erie railroad is immediately north of the right of way of the New York Central railroad. There does not appear to have been any interference by the railroads with the use of the lane except that they had gates placed at either side of the crossing and they placed near the entrance upon the crossing on either side a sign on a post bearing the words " private right of way."

About 1895 or 1896 the owner of lot 50 subdivided that part thereof south of the railroads into lots with streets and included the lane which was shown on the map prepared by him as Evershed street.  In 1904 the owner of lot 49 similarly laid out that part thereof south of the railroads.  The tracts of land so subdivided were improved and many of the lots were sold and dwelling houses were erected thereon.  These subdivisions did not extend north of the railroads.  The lands south of the railroads became known as the village of Evershed.  In 1904 the owners of the fee of the lane or street and other streets formally dedicated the fee thereof to the city of Niagara Falls and the common council of the city after a reference to and a

report by the street commissioner and the corporation
counsel of the city, formally accepted that part of the
lane lying south of the railroads as one of the public streets
in the city of Niagara Falls and it was recorded as such.
Two years before the acceptance of that part of the lane
south of the railroad as stated, the owner of that part of
lot 50 north of the railroad did work on the lane between
the railroads and the Mile Long road by what is termed
" turnpiking " it, and he built ditches on either side
thereof.    This work was done at his personal expense
and he thereafter and until his death two years after the
accident assumed to keep it in repair.    In the same year
that he turnpiked said lane he laid out that part of lot
50 adjoining the lane into building lots showing the lane
that he had worked; thirty-three feet of which was taken
from his lot 50 and thirty feet thereof from lot 49 and a
map then prepared was filed in the Niagara county clerk's
office.    Notwithstanding the filing of said map, the work
on said road by the owner and its general physical con-
dition at the time the city through its common council
accepted the lane south of the railroads by formal action,
nothing was done by the owners or the common council
with reference to that part of the lane north of the rail-
roads.    Later and in 1909 the owner of the lands north
of the railroad and adjoining the lane on the west being
a part of lot 49, subdivided such lands into building lots
and on the map the lane was called Evershed street,
and it showed part thereof as taken from lot 49 and part
thereof from lot 50 as on the map made by the owner of
lot 50.    That map was filed in the office of the county
clerk of the county of Niagara, and also in the office of
the assessors of the city of Niagara Falls,  Some of the
lots so shown on such subdivisions were sold, but except
as to such lots and the work on the lane as stated, the
lands remained and have been worked as farm land.    At
the time of the accident four houses had been erected on

6

lots in the city of Niagara Falls facing the so-called Evershed street north of the railroads. A saloon and one house had been erected in the village of La Salle north of the railroads and east of and facing the so-called street. The center line of the traveled portion of the highway so worked was the line between Niagara Falls and the village of La Salle. The so-called street was irrevocably dedicated as such so far as it affects its use by the purchasers of lots thereon, and it is a question of fact whether such street had been generally dedicated by the owners to public use. The question of serious importance on this appeal is the one whether such street had been accepted by the city of Niagara Falls.

As we have already stated, the lane was used to some considerable extent by the public for twenty years prior to the accident. The statute provides (Section 209 of the Highway Law [Cons. Laws, ch. 25]): "All lands which shall have been used by the public as a highway for the period of twenty years or more, shall be a highway, with the same force and effect as if it had been duly laid out and recorded as a highway." The meaning of the statute in the use of the words "shall have been used by the public as a highway" has been defined by this court.

In *Speir* v. *Town of New Utrecht* (121 N. Y. 420, 429) this court say: "The mere fact that a portion of the public travel over a road for twenty years cannot make it a highway; and the burden of making highways and sustaining bridges cannot be imposed upon the public in that way. There must be more. The user must be like that of highways generally. The road must not only be traveled upon, but it must be kept in repair or taken in charge and adopted by the public authorities. We think all this is implied in the words 'used as public highways.' Although the owner of land may not dedicate it for a public highway, and may not intend or assent that it shall become such, yet if he permits it to be used in the way just indicated for twenty years it would be

deemed a public highway, and he will not be permitted to question the public right.  *  *  *  It does not appear that the public authorities kept it in repair or adopted it, or in any way recognized it as a highway. A private way opened by the owners of the land through which it passes for their own uses does not become a public highway merely because the public are also permitted for many years to travel over it."

Streets and roads dedicated by individuals to public use but not adopted by the local public authorities or declared highways by statute, are not highways within the meaning of the highway acts; and there is no law by which any one can be compelled to keep them in repair. (*City of Oswego* v. *Oswego Canal Co.*, 6 N. Y. 257; *Niagara Falls Suspension Bridge Company* v. *Bachman*, 66 N. Y. 261.) The mere fact that a portion of the public had traveled over the road for twenty years would not make it a highway; but the user must be like that of highways in general and the road must not only be traveled upon but it must be kept in repair, taken in charge and adopted by the public authorities. (*People* v. *Underhill*, 144 N. Y. 316.)

In *Smith* v. *Smythe* (197 N. Y. 457, 461) this court, considering what user of a street is sufficient or effectual to establish it as a public street, say: "That the public have been permitted to travel over the park streets for a few years is unquestioned; but that alone is not such a user as is requisite to constitute a highway. Mere travel by the public upon the roads, without action by the public authorities in repairing or maintaining them, is insufficient."

It is significant in this case that the city in accepting that part of the land south of the railroads which it called Evershed street, did so by specific and formal action. No formal action has ever been taken by the city accepting or looking toward the acceptance of that part of the lane north of the railroads. It has been treated by the

owners as private property. An intention by the city authorities to accept the lane north of the railroads as a city street without formal action should not be presumed.

The plaintiff seeks to establish the acceptance by the city of the lane north of the railroads by the evidence of an employee of the street department who testified in general terms that in 1905 or 1906 by direction of the superintendent of streets or his assistant, he drew four or five loads of crushed stone and filled two or three holes in the so-called street north of the railroads and that again five or six years thereafter he filled two or three holes therein with two loads of crushed stone. The isolated acts which appear to have been incidental, particularly when considered in connection with the general proof that the owner of lot 50 kept the so-called street in repair prior to and after the accident, are not sufficient to show that the city intended thereby even if knowledge thereof was shown in the common council or board of public works thereof to accept the street and become liable for its maintenance. (*People* v. *Underhill,* 144 N. Y. 316; *Matter of Wallace Avenue,* 222 N. Y. 139.)

It is further claimed that the city accepted the street because the assessors thereof after the map was filed with them by the owner of lot 49 as hereinbefore stated assessed property formerly known as lot 49 of the State Mile Reserve by the lot numbers as shown on the map subdividing the same and that the assessment roll was confirmed by the common council. The filing of such map was a voluntary act by the owner of the land and not pursuant to any statutory provisions. The mere fact of filing a map by the owner of the land showing a street thereon is wholly immaterial on the question of its acceptance by the municipality. (*People* v. *Underhill, supra.*) Sales of lots appear to have been made from said lot 49 and after such change of ownership the assessors accepted the division as shown on the map so voluntarily filed. They could not well have done otherwise. A tax assessor

has no authority for the municipality to accept a dedication by the owner of lands for street purposes and the confirmation of the assessment by the common council had no such direct relation to the acceptance by the city of a public street as to charge the city with the acceptance and maintenance thereof. The confirmation was simply pursuant to section 372 of the city charter.

It is also claimed that the streets as shown on said map were not included in the assessment for purposes of taxation and that the failure so to assess them shows that the streets were accepted by the city. The mere assessment by assessing officers of lands which they describe as being on a so-called street named by them is no evidence of a proper acceptance of such so-called street. (*People* v. *Underhill, supra.*)

The mere omission of a municipality to assess land dedicated by the owner for a street is not alone sufficient evidence to sustain a finding of an acceptance by the municipal authorities of such land as a public street. (*Fuller* v. *Township of Belleville,* 67 N. J. Eq. 468.) Even if the matter of the assessment of the streets is taken into consideration it might well be that the value of the lots for the purpose of taxation included the value of the land within the line of the alleged streets. (*Arnold* v. *City of Orange,* 73 N. J. Eq. 280.)

The judgment in favor of the plaintiff must be reversed. There are questions presented by the record although very inadequately that should be given more careful consideration on a new trial. The questions referred to grow out of the fact that the so-called street is upon the line between the city of Niagara Falls and the village of La Salle. The statute (Highway Law, sec. 207) provides how such a street should be laid out. It also provides: "All highways heretofore laid out upon the line between any two towns or between a town and a city or an incorporated village shall be divided and allotted or redivided and reallotted, recorded and kept in repair in the manner

above (in said section) directed." We do not express any opinion as to whether the so-called street situated as it is in part in the village of La Salle can without definite formal action be accepted by the city independent of action on the part of the village.

The judgments should be reversed and new trial granted, with costs to abide the event.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Judgments reversed, etc.