## Dormont Borough Appeal.

## Leech Appeal.

Argued March 24, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused June 24, 1952.

*Arthur Wessel, Jr.,* with him *Walter W. Riehl,* for appellant.

*John G. Wayman,* with him *Herbert V. Brownlee,* for appellees.

OPINION BY MR. JUSTICE JONES, May 27, 1952:

At a sheriff's sale sur tax liens and municipal claims, the Borough of Dormont purchased a tract of unimproved land having an area of approximately four and one-half acres. The Borough paid all of the County taxes against the property and took title by Sheriff's Deed, dated September 19, 1942, in the name of the Borough alone under an agreement with the School District that, in the event of a subsequent sale of the property by the Borough, the School District would share in the proceeds in proportion to its unpaid tax claims after deduction of all costs and claims paid by the Borough. The land was roughly an elongated rectangle in shape and lay adjacent, lengthwise, to one

side of Dormont Park, a twenty-nine acre tract which the Borough had established and maintained as a public park for a number of years.

By ordinance enacted March 1, 1943, and approved March 3, 1943, the Borough dedicated the four and one-half acre tract to park purposes as a part of Dormont Park. By resolution of March 8, 1943, the School District confirmed the dedication (in a sense quitclaimed its pecuniary interest in the property) "on condition and with the understanding that if at any time the said lands should not be used for Park purposes but be sold, conveyed or disposed of by the Borough of Dormont, that the Borough shall pay to the School District" the amount of the latter's unpaid tax claims.

On May 15, 1950, the Borough Council by a vote of five to two (all members being present) adopted a resolution authorizing the grant to a private individual of an option to purchase the four and one-half acres above-mentioned for the sum of $50,000 for the erection thereon of an apartment house, at a total cost of $5,500,000, according to plans and specifications to be approved by the Borough Council. The resolution directed the Borough Solicitor, in the event the option was exercised, to prepare a proper ordinance rescinding the ordinance of dedication of March 3, 1943. The Burgess vetoed the resolution, setting forth at length in a letter to council nine reasons for his action. None of such reasons questioned the power of council to rescind the dedication. It was the Burgess's expressed view that the property should be sold in lots for the erection thereon of homes rather than an apartment house. Council passed the resolution over the Burgess's veto (again by a vote of five to two) on June 5, 1950 (effective June 16, 1950), and a written agreement of option between the Borough and the prospective purchaser was executed on June 17, 1950, in accordance with the resolution.

The present appellees, being citizens, taxpayers and property owners of the Borough, petitioned the Court of Quarter Sessions of Allegheny County pursuant to the provisions of the Act of May 4, 1927, P. L. 519, Art. X, Section 1010, as amended, 53 PS §12900, praying that the resolution of May 15, 1950, be declared invalid and illegal. After hearing, the Court of Quarter Sessions found that the dedication of the four and one-half acre tract to park purposes had never been accepted by the public and, thereupon, entered an order dismissing the petition. On the petitioners' appeal, the Superior Court reversed the order of the court below. The matter is now before us pursuant to our allocatur granted on the Borough's petition. The basic question involved is whether the evidence justified the trial court's findings and conclusion. As the Superior Court recognized, ". . . the dedication to public use in the present case, by resolution of the Borough council, did not prevent the Borough from selling the property if the public did not in fact accept the land for the uses of the dedication."

A municipality's dedication to a public use of land which it owns in fee must be accepted by the public in order to become binding upon the municipality. We need not here consider whether such a dedication of property, municipally owned in fee (as distinguished from property condemned or otherwise acquired for a specific public purpose), if accepted by the public, becomes irrevocable. It is sufficient for the present that such a dedication must be accepted by the public in order to become binding at all. In *Philadelphia Museums v. University of Pennsylvania*, 251 Pa. 125, 132, 96 A. 126, it was said that "A dedication to public uses does not become binding upon the dedicator until there has been an acceptance on the part of the public. Dedication is the joint effect of the offer of the owner to dedicate land and acceptance of such land by the pub-

lic. Two parties are necessary, the owner on one side and the public on the other; there can be no dedication without the participation of both; Los Angeles v. Kysor, 125 Cal. 463. This is the general rule applicable to a dedication by a private individual, and there seems to be no good reason why the rule is not applicable to a dedication made by a municipality. Where the individual has made the dedication and no one has acted upon the offer, in such manner that he may be injured by its revocation, the former may revoke even though there has been an actual dedication and not a mere offer." With us, the municipal act of dedication does not embody an acceptance thereof for the public. The dictum to opposite effect in *Attorney General v. Tarr*, 148 Mass. 309, 19 N. E. 358, was expressly rejected by this court in *Philadelphia Museums v. University of Pennsylvania*, supra. Nor do the circumstances of the instant case otherwise admit of an express acceptance of the dedication by the public. It is only by unmistakable acts of user in keeping with the intended purpose of the dedication that the public's acceptance can be evidenced.

In reversing the order entered below, the Superior Court said that "the lower court erred in ignoring the effect of public acceptance of the dedication of the tract as a part of Dormont Park . . ." and "capriciously, ignored the question as of no controlling importance." With that, we cannot agree. The trial court found that "the Borough did not appropriate funds, nor did it spend any public funds to make the tract of land accessible for the purposes intended." It was indisputed, as the lower court further found, that "there had been no improvements made so that the property could be used for Park purposes." The significance of these findings is apparent when it is realized that "there must . . . be a user for the purposes of the dedication, and acts to support such dedication, such as mainte-

nance . . .": 26 C.J.S. §37 (a), p. 101; and *Johnson v. City of Niagara Falls,* 230 N. Y. 77, 129 N. E. 213. Not only did the finding last above quoted negative any idea that the property in question was used by the public as a part of the Park, but the petitioners, on their part, utterly failed to meet the burden resting upon them to prove public user: see *Philadelphia Electric Co. v. Philadelphia,* 303 Pa. 422, 432, 154 A. 492. The evidence which they adduced fell far short of establishing acts of user by the public of the four and one-half acre tract *as a part of the Park.* Their main grievance was that the building of an apartment house on the property in question would depreciate the values of their properties,—a wholly irrelevant consideration: cf. *Kerr's Appeal,* 294 Pa. 246, 249, 144 A. 81.

The testimony upon which the petitioners chiefly relied on the question of public acceptance of the dedication related to the use of the plot by small boys of the neighborhood for play, a use which the petitioners failed to show had not been made prior to the dedication. It was not proof of the ". . . greater use . . . required to show an acceptance": *Easton v. Koch,* 152 Pa. Superior Ct. 327, 338, 31 A. 2d 747, citing *City of Watertown v. Troeh,* 25 S. D. 21, 125 N. W. 501. The inference is inescapable that the persons using the four and one-half acre tract were residents of the neighborhood and not the public at large. Such limited use is not sufficient to support a finding of acceptance by the general public: *Philadelphia Electric Co. v. Philadelphia,* cit. supra. The petitioners further lay stress on the advantages of the plot for the play of the boys of the immediate neighborhood in contrast with the established playground of the Park proper available to the general public. Other acts shown as evidence of user were the occasional parking of cars on the plot, the storage of ashes thereon by the Borough, the dumping by building contractors of excavated earth (done at

their request and not at the instance of the Borough), use of the tract for Victory Gardens during World War II and one picnic supper by a councilman and his family. The mowing of "grass" on the four and one-half acre tract, which the Superior Court cited as evidence of park maintenance, amounted to no more, as the preponderant testimony reveals, than cutting down the weeds whose rank growth in the summer obscured clear vision at the street intersections at either end of the plot and, also, as a part of the local campaign for the elimination of ragweed. Actually, the uses shown were not other than what might be made of any unfenced, unimproved and unkempt plot of ground.

The learned trial judge was fully warranted in concluding that "From the testimony adduced at the trial of this case, it cannot be said that the rights of the public have vested in reliance upon the dedication . . . ." *Milford Borough v. Burnett,* 288 Pa. 434, 136 A. 669, directly rules this case. There, the municipal plaintiff sought to set up against an owner of land his dedication of a highway. To do so, it was incumbent upon the municipality to prove acts of user by the public sufficient to constitute an acceptance of the owner's offer to dedicate. The chancellor found as a fact that there was no acceptance by the public of the offer. The Superior Court reversed. In reversing the Superior Court and restoring the decree of the chancellor, we said at p. 441 et seq.,—"In ascertaining whether an acceptance has taken place, the question is purely one of fact. And where the trier of the facts, in considering the evidence, finds that the municipality has not accepted the dedication, his conclusion is final, unless the finding is the result of capriciousness of the fact finder. A reviewing authority will not arbitrarily disregard the trier's right to pass on the credibility of the witnesses, and substitute its judgment for that of the fact finder. Especially is this emphasized when the

evidence before the fact-finder is disputed, as it was in this case. . . . The rule above announced is as much binding on the Superior Court as it is on this court. The question at issue in the court below was purely one of fact and the learned judge took into consideration the legal principles above announced as applicable to the facts of the case; he also reached a conclusion on the facts clearly justified by the evidence, which was meager and disputed. But even if our judgment on it should be different, under the rule above announced, the chancellor's finding must stand." The present pertinency of the foregoing is obvious.

We see no merit in the petitioners' contention that the Borough Council was without power to grant an option to sell the property in question. The power of municipalities to sell properties which they have jointly acquired at tax sales is particularly broad. See Sec. 3 of the Act of July 28, 1941, P. L. 536, 72 PS §6151.3. It will be recalled that, in purchasing the property here involved at the tax sale, the Borough was acting for itself and the School District. An option may be the only efficient means of initiating a sale advantageous to a borough. And, the attainment of that end is the express responsibility of council in agreeing to convey property of a borough. See Sec. 1201, IV, of The Borough Code of July 10, 1947, P. L. 1621, 53 PS §13311.

The order of the Superior Court is reversed and the order of the Court of Quarter Sessions of Allegheny County is affirmed at the appellees' costs.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I dissent. I would affirm this case on the able opinion of Judge HIRT, speaking for a unanimous Superior Court.