THE NIAGARA FALLS SUSPENSION BRIDGE COMPANY, Appellant, *v.* HENRY BACHMAN, Administrator, etc., Respondent.

66   261
109   523
66   261
121   429
66   261
144   324
66   261
150   148

Where the owner of land lays the same out into lots and streets, makes and files a map or plot thereof, and sells and conveys lots by the map bounded upon the streets, as delineated thereon, this does not necessarily, and without other facts, make the streets so laid out public highways.

To constitute a public highway by dedication, there must not only be a setting apart and a surrender to the public use of the land by the owner, but, also, an acceptance and formal opening by the proper authorities, or a user.

The acts and declarations of the landowner must be unmistakable in their purpose, and decisive in their character, showing the intent to dedicate the land absolutely and irrevocably to the public use.

Upon a map, made and filed, of lands in the village of N. F., so laid out, was a statement and reservation as to a portion of the streets and avenues, to the effect that they were laid out not only with reference to public use, but for the use of hydraulic establishments, and the proprietors therefore reserved a discretionary power to direct how much and what part of said streets should be used for canals and races, and what part appropriated to public use.   In an action for trespass against the village superintendent, in entering upon a part of a street as to which the reservation applied, cutting down trees, etc., for the purpose

of opening it as a highway, *held*, that the reservation negatived any intention of dedicating the specified streets and avenues absolutely and irrevocably to the public use, and some further act and declaration by the owners was necessary to a complete donation; that, before the public could acquire any rights or take any easement under the qualified or proposed dedication, the assent and donation of the proprietors was required.

The original map was filed in 1832. In 1861, under the reserved right, a new map was filed, upon which the *locus in quo* was not delineated as a street; up to this time there had been no occupation by any public overt act, or any use as a highway, or any act assuming to recognize or accept any dedication, absolute or qualified, of that part of the street, save a formal resolution of the village trustees declaring the same a public highway; the entry by defendant was after filing the new map. *Held*, that, aside from the reservation, the proprietors had a perfect right to recall the donation, which having been done, the action would lie.

Declarations of plaintiff's treasurer, and one of its directors, consenting to and directing the cutting down of the trees and opening the street were admitted as evidence on the part of defendant, under objection. *Held*, error; that the officer, simply as such, was not authorized to speak for and bind the corporation, and, without further evidence of his authority, his declarations were incompetent.

(Argued April 28, 1876; decided May 23, 1876.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department affirming a judgment in favor of defendant, entered upon the report of a referee.

This action was for trespass, alleged to have been committed by Peter D. Bachman, defendant's intestate, who was the original defendant, upon lands of the plaintiff, situate in the village of Niagara Falls.

It was claimed by defendant that the *locus in quo* was a public highway, and that said Bachman, as superintendent of the village, entered thereon, cut down trees, dug up the soil, etc., for the purpose of making and grading the street, which was the trespass complained of.

In 1832, Augustus Porter and Peter B. Porter, being joint owners of lands within the now corporate bounds of said village, lying along the west bank of the Niagara river, caused the same to be laid out into lots, streets and avenues, and

caused a map thereof to be made and filed.   New maps were made and filed in 1834, 1836 and 1861; the proprietors sold the lots, referring to the maps and bounding upon the streets and avenues delineated thereon.   Upon the maps of 1836 and 1861 was the following note: "The several streets and avenues laid out in this village, between Main street and the river, and between Buffalo street and the river, have been so laid out by the proprietors, not only with reference to public use and travel, but with reference to the particular use and convenience of hydraulic establishments already erected or which may hereafter be erected.   They, therefore, reserve to themselves, their heirs and assigns, a discretionary power to direct how much and what part of said streets and avenues shall be used for canals and races, and how much and what parts thereof appropriated to public use."

On said map of 1861 was an additional note, a portion of which is as follows: "Remark.   This map exhibit the changes required to be made by the construction of railroads and hydraulic canal."

Main street referred to ran north and south, parallel with the general course of the river.   Between that and the river, and running parallel with Main street, was Canal street. Another street ran east and west, at right angles with Main and Canal, named on the first map Hill street, on the subsequent maps Niagara street; on the maps, prior to 1861, it was laid out as running to the river, on the map of 1861 it was delineated as only extending to Canal street.   The *locus in quo* was that portion of said street, as it appeared on the original maps, between Canal street and the river.   Prior to the alleged trespass Niagara street, east of Canal, had been opened and worked, the lots adjoining had been sold, houses built thereon, and the street, for over twenty years, had been used as a public highway.   Niagara street west of Canal street had never been opened and worked, it was sparsely covered with forest trees, and a high ridge crossed it which had to be graded down to make it passable as a street.   In 1861, with the consent of the proprietors, a ditch had been dug by the

village along the north line of Niagara street, west of Canal, for the purpose of carrying off the water from said street, east of Canal.    The lands west of Canal and south of Niagara were inclosed; north of Niagara they were not inclosed but left open to the public.    In 1853 the trustees of the village who, by its charter, were commissioners of highways, adopted an ordinance declaring Niagara street to be open as a highway in accordance with the map of 1836, westerly to Water street, a street delineated on said map, west of Canal street and along the bank of the river.    By the amended charter of the village of 1866 (§ 7, chap. 149, Laws of 1866) it was declared that all streets, etc., laid down upon the map of 1861 "now open to and used and traveled upon by the public, to the extent" they are so opened and used, should be deemed and were public highways, and whenever any of such streets shall be further opened to the public and such further opening thereof duly accepted by the trustees of said village, and the same as so further opened and adopted shall be by them declared public highways, the same shall to the extent of such further opening and adoption thereupon be deemed and hereby are declared to be thereafter public highways, etc.

In 1867 plaintiff, a corporation incorporated for the purpose of building and maintaining a bridge across the Niagara river by proceedings under its charter acquired title to that portion of the lands so mapped out, lying west of Canal street, including the *locus in quo*.    By the order of the court in such proceedings the title acquired was declared to be subject only to the rights of the public in the street passing through the lands described as laid down on the map of 1836, with alterations made in 1861.    On June 9, 1868, the village trustees adopted a resolution directing that all obstructions caused by trees standing within the line of Niagara street, between Canal and Water streets, be removed, and that the same be put in condition for use, and by resolution of June 15, 1868, the village superintendent was directed to remove such trees as he might deem necessary.    In pursuance of said resolutions said Bachman cut down and carried away several trees, and

excavated for the purpose of grading the street, which was the trespass complained of.

Upon the trial of the cause the referee allowed defendant to prove, under objections and exceptions, various statements and declarations of Delos De Wolf, plaintiff's treasurer and one of its directors, in substance consenting to the opening of the street and directing defendant and others engaged to go on with the work. Further facts appear in the opinion.

The referee found the *locus in quo* was a public highway, and that Bachman had a right to enter thereon, and do the work necessary to remove obstructions and improve the street.

*A. Perry* for the appellant. The referee erred in deciding that the strip of land called Niagara street, west of Canal street, was a public highway. (1 R. S., 521, § 100; 3 Kent's Com., 419, 451; Washb. on E. and S., 173 [m. p. 126]; id., 180 [m. p., 133]; *Watt* v. *Trapp,* 2 Rich., 136; *Gibson* v. *Durham,* 3 id., 85; *Carvon* v. *Dozey,* 3 Jones L. R. [N. C.], 23; *Gentleman* v. *Soule,* 32 Ill., 271; *Greene* v. *Chelsea,* 24 Pick., 71; *Child* v. *Chappell,* 9 N. Y., 257; *Holdane* v. *Trustees, etc.,* 21 id., 474; *Carpenter* v. *Gwynn,* 35 Barb., 395; *McMannis* v. *Butler,* 51 id., 436; *Roberts* v. *Karr,* 1 Campb., 262, note; *Lethbridge* v. *Winter,* id., 263; *Comm.* v. *Newbury,* 2 Pick., 51; *Durgin* v. *Lowell,* 3 Al., 398; *Ward* v. *Davis,* 3 Sandf., 502; *Scott* v. *State,* 1 Sneed, 629; *Bissell* v. *N. Y. C. R. R. Co.,* 23 N. Y., 61; *Clements* v. *Village of West Troy,* 16 Barb., 251; *Bowers* v. *Suff. Manuf. Co.,* 4 Cush., 332; *Trustees, etc.,* v. *Otis,* 37 Barb., 50; *Gould* v. *Glass,* 19 id., 179; *Hoole* v. *Attorney-General,* 22 Ala., 190; *Ward* v. *Davis,* 3 Sandf., 502; *City of Oswego* v. *Oswego C. Co.,* 2 Seld., 257; *Underwood* v. *Stuyvesant,* 19 J. R., 186; *Lee* v. *Village of Sandy Hill,* 40 N. Y., 442.) The strip of land was never laid out or dedicated as a highway. (1 R. S., 513, § 55; id., 525, § 125; *Woolsey* v. *Tompkins,* 23 Wend., 324; *Fitch* v. *Comrs., etc.,* 22 Wend., 132; *People* v. *Comrs., etc.,* 27 Barb., 94; *Stewart* v. *Wallis,* 30 id., 344; *People* v. *Hynds,* 30 N. Y., 470; *Miller* v. *Brown,* 56 id., 383; *Christy* v. *Newton,* 60

Barb., 332; *McMannis* v. *Butler*, 51 id., 436.)   There has been no express and unequivocal user of the land in question as a street or highway.   (40 N. Y., 442; *Wohler* v. *B. and S. L. R. R. Co.*, 416 id., 686; *Wright* v. *Lukey*, 3 Cush., 295.) The superintendent had no power to bind the village.   (37 Barb., 50; *State of Maine* v. *Bradley*, 40 Me., 154.)   By making and filing the map of 1861 the Porters revoked any dedication which they had intended to make of the *locus in quo*.   (40 N. Y., 442; 21 id., 474.)   The referee erred in receiving in evidence the declarations of the treasurer and one of plaintiff's directors.   (*Soper* v. *B. and R. R. R. Co.*, 19 Barb., 310; *Bk. of Monroe* v. *Field*, 2 Hill, 445; *Ward* v. *Davis*, 3 Sandf., 502; *Marble* v. *Whitney*, 28 N. Y., 397, 307; *Babcock* v. *Lamb*, 1 Cow., 238; 2 R. S., 407, § 8; V. S. Pldgs. 470.)

*H. N. Griffith* for the respondent.   The *locus in quo* was properly held to be a public highway.   (*Hunter* v. *Trustees, etc.*, 6 Hill, 411; *Child* v. *Chappell*, 5 Seld., 256; *Bew* v. *Mills*, 21 Wend., 290; 4 Kent., 129, 130, 519; 3 id., 566, note; Ang. on Highways, §§ 141, 142; 2 Greenl. on Ev., § 554; *Clements* v. *West Troy*, 10 How. Pr., 199; *Bissell* v. *N. Y. C. R. R. Co.*, 26 Barb., 634; 23 N. Y., 64; 21 id., 474; 23 Barb., 123; Thompson on Highways, 56, 57; *Hickok* v. *Trustees, etc.*, 41 Barb., 130.)

*Per Curiam.*   The referee has, to a great extent, substituted a statement of the evidence for a report of the facts as required by statute.   He has found, as a conclusion of law, that the *locus in quo* was a public highway at the time of the entry, and the removal of the trees and gravel by the intestate, then an overseer of highways; but he has not found any fact from which the conclusion necessarily results.   The disputed question of fact was whether a highway legally existed at the place, at the time of the alleged trespass.   There was no proof that the land had been appropriated and occupied by the public, by authority of law and without or against the assent

of the owner, as and for a highway. There were no steps taken by the village or town authorities to acquire a title to the property as against the proprietors and subject it to an easement as a public highway under the statutes regulating the laying out and opening highways and public streets. Neither was there any evidence that the *locus in quo*, had at any time been opened or used as a highway, or that the public had acquired an easement by prescription. The referee finds that this part of Niagara street, although open to the public, because not inclosed, had not been opened as a highway, and had not been and could not, in its natural state and as it then was, be used for the ordinary purpose of a highway.

The claim is, that the land had been dedicated by the owner to the public as and for a highway, and that the dedication had been accepted by the proper authorities, and that thus the *locus in quo* had become a public highway, with the assent of the owner and by the act of the public officials. If the evidence, either as reported by the referee or as appearing upon the record, would have justified the finding as a fact such dedication and occupation, the judgment, so far as this point is concerned, may be sustained, notwithstanding the infirmities of the report. Every reasonable intendment may be made in support of a judgment. The evidence and the findings of the referee show that, as between the original proprietors of the land and those to whom conveyances had been made of lands upon the line of what is claimed as a street west of Main street, the latter were entitled to a right of way and a passage. But this was a private right and did not necessarily, and without other facts, make the way a public way, subject to the control of the highway officers, or make its support and maintenance a public charge. If it was a public highway the responsibility for its proper repairs and support was upon the public; and the duty was never assumed or undertaken or attempted, except by the commission of the acts for which this suit is brought. The existence of Niagara street as a public highway east of Canal street was clearly established. It had been used and occupied as a public high-

way, with the assent of the original owner of the land, for many years, and the fact of its absolute surrender to and acceptance by the public was undisputed. The only act of dedication of any part of the street to the public use, other than the acquiescence in its actual use, was the making and filing of a plot of the ground, with the street laid down thereon, by the owner, and the sale and conveyance of lots by the plot and bounded upon the streets as delineated thereon. But upon the maps and plots filed there was an express quali-fication and reservation of rights in respect to the streets and avenues as laid down between Main street and the river, including the *locus in quo,* and while east of Main street, Niagara street, actually occupied and improved as a highway by the town, and subsequently by the village authorities, was dedicated absolutely, there was no such absolute surrender and dedication to the public use of the streets west of Main street. It was in terms declared, and subject to the declara-tion grantees accepted their conveyances and the public enjoyed any easement in the premises, that the streets and avenues between Main street and the river had been laid out by the proprietors, not only with reference to public use and travel, but also with reference to the particular use and con-venience of the hydraulic establishment existing or thereafter to be erected; and they in terms reserved to themselves, their heirs and assigns a discretionary power to direct how much and what parts of said streets and avenues should be used for canals and races, and how much and what parts thereof appro-priated to public use. Under the reserved right, a revised map was filed in 1861, exhibiting the changes made necessary by the construction of railroad and hydraulic canal, and con-tinuing the original reservation, on which map Niagara street is not delineated or laid down as a street. West of Canal street, up to that time, there had been no occupation by any public act, or use, as a highway, or by any act other than a formal resolution of the village trustees, declaring the same a public highway, assuming to recognize and accepting any dedication, absolute or qualified, of this part of the street,

and the proprietors had the perfect right, aside from the reservation, to recall the donation. To constitute a public highway by dedication, there must not only be an absolute dedication, a setting apart and a surrender to the public use of the land by the proprietors, but there must be an acceptance and a formal opening, by the proper authorities or a user. (*Fonda* v. *Borst*, 2 Keyes, 48; S. C., 2 Abb. Ct. of App. Cas., 155; *Holdane* v. *Cold Spring*, 21 N. Y., 474; *Oswego* v. *Oswego Canal Co.*, 2 Seld., 257.) The first act is the dedication, the voluntary donation by the owner of the land, and the public can only accept that which has been donated, and the acceptance must be *secundum formam doni*, and if they cannot take according to that, they cannot take at all. (*Stafford* v. *Coyney*, 7 B. & C., 257; *Poole* v. *Huskinson*, 11 M. & W., 827.) The dedication must be made with intent to dedicate. (*Barraclough* v. *Johnson*, 8 A. & E., 99.) The acts and declarations of the land owner indicating the intent to dedicate his land to the public use must be unmistakable in their purpose and decisive in their character to have the effect of a dedication. (Wash. on Ease., 182.) In this case the owners, by their acts and declarations, negatived the intention of dedicating the *locus in quo*, absolutely and irrevocably, to the public use, and thus destroyed the force and effect usually given to maps and plots of land made under similar circumstances, as evidence of an intent to dedicate, or of an actual dedication of land to the public. The maps and plans, in connection with the explanatory addenda and reservation, do not show a present and actual dedication of any part of the streets and avenues west of Main street. Before the public could acquire any rights or take any easement under the qualified or proposed dedication, and set apart and improve any part of the streets as public highways, the assent and direction of the proprietors was required. Some further act and declaration by the owners was necessary to complete the donation of any part of the lands within the limits mentioned for a public highway. When so donated and occupied, the right of the owners was subject to the public easement and the rights of

the public over the lands so dedicated. The maps and plans, with the explanatory and qualifying notes, taken together look to a future act to constitute a donation or setting apart of the streets, or any part of them, to the public use. The public could only take and occupy such streets as the proprietors should thereafter direct. Until such further act, by the terms of the reservation, the owners reserve to themselves, and their heirs and assigns, the absolute right to control and direct the use of the premises, a power entirely repugnant to, and destructive of, any supposed dedication. The *locus in quo* was not tendered or donated to the public to be occupied and enjoyed at their option, and as they should elect. The bridge company succeeded to and were the grantees, by operation of law, of the original proprietors, and were possessed of all the title to, and interest in, the *locus in quo,* and, as the successors to the title of the original owners, had the right to direct what parts should be used as a public highway. There was no evidence that the public had acquired any right to use, or had used, the *locus in quo* as a highway, or that the proprietors had completed its dedication, by directing what parts should be used by the public prior to the acquisition of the title by the plaintiff. Hence the admissions and declarations of Mr. DeWolf, if authorized to speak for the company, were material, and the referee, as if relying upon his declarations as evidence of a consent that the entire street as laid down upon the map had been dedicated to, and might be taken by, the public for the purposes of a highway, has found his declarations as proved. The admission of such declarations was error. They were not competent and should have been excluded, without further evidence of his authority to represent and bind the plaintiff. The referee has evidently given effect to the declarations, as evidence that the *locus in quo* was a part of the public highway, by the donation and assent of the proprietors, by which that which was left uncertain by the notes upon the maps and plans as to the parts of the street which might be taken and used by the public, had been made certain and definite and the whole street had been dedicated. The error

was not harmless in view of the effect evidently given the evidence by the referee.

In *Whitney* v. *Filkins,* in which we are furnished with an opinion in manuscript by Judge DANIELS, a highway existed by prescription through Canal street, as laid down on the map and independent of the dedication now relied upon.

There may be other evidence to establish the existence of a highway and that the intestate was in the lawful discharge of his duties in doing the acts complained of, which, unless the parties conclude that the litigation is profitless and not worth further continuance, may be produced upon another trial. But upon the case made and for want of proof of the dedication of the *locus in quo* as a public street, or other competent evidence establishing the existence of the highway, and for error in admitting in evidence the declarations of Mr. De Wolf against the company, the judgment must be reversed and a new trial granted.

All concur.

Judgment reversed.