THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* BROOKLYN AND QUEENS TRANSIT CORPORATION, Appellant.

Argued March 8, 1937; decided April 20, 1937.

*Trabue Carswell* and *George D. Yeomans* for appellant. It was error to exclude from consideration the defense that defendant owned the strip of land in question and had the right to devote it to railroad use in the maintenance and operation of its trolley loop terminal. (*People v. Sutherland*, 252 N. Y. 86.) There was no offer and acceptance of a dedication of the strip of land for a public street. The maps do not indicate any offer of dedication of the land for a public street or constitute in any wise any proof of a dedication. (*Nichols Copper Co. v. Connolly*, 208 App. Div. 667; 240 N. Y. 596; *Matter of Fox St.*, 54 App. Div. 479; *Stillman v. City of Olean*, 228 N. Y. 322; *Mark v. Village of West Troy*, 76 Hun, 162; 151 N. Y. 453; *People v. Underhill*, 144 N. Y. 316; *Smith v. Smythe*, 197 N. Y. 457; *Matter of City of New York* [*Wallace Ave.*], 222 N. Y. 139; *Matter of City of New York* [*Saratoga Ave.*], 226 N. Y. 128.) The evidence does not show that the defendant and its predecessors threw open their property for use by the general public as a passageway and with intent that it should become a public street. (*N. Y. C. & H. R. R. R. Co. v. Village of Ossining*, 141 App. Div. 765; 207 N. Y. 648; *Conklin v. N. Y. C. & H. R. R. R. Co.*, 149 App. Div. 739; 207 N. Y. 752; *Lehigh & H. R. R. Co. v. Village of Warwick*, 164 App. Div. 55.) There was no acceptance by the municipality of any offer of dedication. (*People v. Underhill*, 144 N. Y. 316; *Smith v. Smythe*, 197 N. Y. 457; *Matter of City of New York* [*Wallace Ave.*], 222 N. Y. 139.) On the evidence there was not, as a matter of law, such user by the public and exercise of control and

dominion by the city as to establish the character of the strip of land as a public street, for the purpose of the conviction of the defendant. (*Speir* v. *Town of New Utrecht*, 121 N. Y. 420; *Palmer* v. *Palmer*, 150 N. Y. 139; *Johnson* v. *City of Niagara Falls*, 230 N. Y. 77; *People* v. *Sutherland*, 252 N. Y. 86; *Klin Co.* v. *N. Y. R. T. Corp.*, 271 N. Y. 376.) It was not possible for the municipality to acquire the land here in question for a public street, paramount to the rights of the railroad companies. (*Matter of City of Buffalo*, 68 N. Y. 167; *Matter of Mayor* [*161st St.*], 52 Misc. Rep. 596; 135 App. Div. 912; 198 N. Y. 606; *Matter of City of New York* [*Saratoga Ave.*], 226 N. Y. 128; *City of Cohoes* v. *Morrison*, 42 Hun, 216; 116 N. Y. 662; *Speir* v. *Town of New Utrecht*, 121 N. Y. 420; *Pennsylvania R. Co.* v. *Freeport*, 138 Penn. St. 91; *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474; *Adirondack Power & Light Co.* v. *Evans*, 226 App. Div. 490; *Matter of City of New York* [*Realty Associates*], 256 N. Y. 217.)

*Charles P. Sullivan*, District Attorney (*John H. W. Krogmann* of counsel), for respondent. The evidence warranted the finding that the People had acquired rights by user in Palmetto street, that it was in fact a public highway, and it follows therefrom that a conviction of the defendant could properly be had. (*Matter of Fox Street*, 54 App. Div. 479; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Smyles* v. *Hastings*, 22 N. Y. 217; *People ex rel. Minard* v. *Donovan*, 228 App. Div. 596.) The Highway Law (Cons. Laws, ch. 25) establishes the public right in and to the area in the case at bar, irrespective of any dedication by the owner. (*Jaynes* v. *Sammis*, 132 N. Y. 239; *Wellsville* v. *Hallock*, 139 N. Y. Supp. 961; *Davenpeck* v. *Lambert*, 44 Barb. 596; *McCutcheon* v. *Terminal State Comm.*, 88 Misc. Rep. 601; *Buffalo* v. *D., L. & W. R. R. Co.*, 68 App. Div. 488; 178 N. Y. 561; *Ivory* v. *Deerpark*, 116 N. Y. 476; *Porter* v. *Village of Attica*, 33 Hun, 605; *McCarthy* v. *Lake Shore R. R. Co.*,

76 N. Y. 592; *People* v. *Sutherland*, 252 N. Y. 86.) There is no evidence of any abandonment. The highway having been established, the burden would be upon the defendant to establish abandonment. There was no attempt to offer proof in that regard. (*Horey* v. *Haverstraw*, 124 N. Y. 273; *Trainer* v. *Lewis*, 243 App. Div. 630; *Town of Leray* v. *N. Y. C. R. R. Co.*, 226 N. Y. 109.)

HUBBS, J. The only question presented for determination upon this appeal is whether the land involved is a " public street or highway." Upon that issue, the burden of proof was upon the People to establish beyond a reasonable doubt that the land in question constituted a public highway or street. (*People* v. *Sutherland*, 252 N. Y. 86.) The Court of Special Sessions had jurisdiction to determine that question, as the issue was not as to the title of land but as to whether the particular land constituted a " public street or highway." (*People* v. *Loehfelm*, 102 N. Y. 1.)

The information charged that " The defendant on or about November 16, 1934, and for several months prior thereto, prior to the time of filing this information did unlawfully maintain a public nuisance at the public highway on Palmetto Street and Myrtle Avenue at Ridgewood in the Borough and County of Queens, City and State of New York, by maintaining thereon four sets of trolley tracks and using same as a terminal for six trolley lines and by continuously blocking the same with parked trolley cars, thereby preventing free access to, over and along said highway by persons operating motor or horse-drawn vehicles. * * * "

In section 1530 of the Penal Law a " public nuisance " is defined as " a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission: * * * 3. Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage * * * a public park, square, street or highway * * *."

Defendant concedes that it has maintained four sets of trolley tracks on the land in question and has used it as a terminal. In 1865 Nicholas Wyckoff, the owner of the land in question and adjoining land, filed a map in Queens County Register's office on which he plotted the land into lots with streets. One street was called Palmetto street. The land so plotted was used as farm land. Thereafter a large part of that land, including the land plotted as Palmetto street, was conveyed by farm description to Andrew Ginder. In 1871 Ginder filed another map in the Register's office showing the land divided into lots and indicating Palmetto street located as before. He thereafter conveyed certain of the lots with reference to that street. In 1880 and 1881 the Bushwick Railroad Company (one of defendant's predecessors) established a large railroad terminal which included the area of Palmetto street as indicated on the maps extending from Myrtle avenue on the south to St. Nicholas avenue on the north. The land used as a terminal was acquired in fee by conveyances from Ginder and his grantees and included all lots abutting on Palmetto street as designated on the map between Myrtle and St. Nicholas avenues.

Prior to 1880 and 1881, when the railroad company obtained title, nothing is shown to have been done tending to establish acceptance by the city and construction of a street on the strip of land in question or that there was any public user thereof. In 1881 the Bushwick Railroad filed a map, now in the records of the Register's office of Kings county. That was a route map of one of its lines. Part of the route was along Palmetto street as that street is projected through and over the lands of the Bushwick Railroad Company. Two other maps were produced by the People. It does not appear that those maps were made by the authority of the owners of the property or by authority of the city. From 1881 until the electrification of the railroad in 1896, the strip of land in question was used exclusively by the railroad for terminal purposes.

There was no paving except in front of the waiting room and in front of the office.

From 1896 until 1917 a system of terminal operations similar to the one now in use was maintained on the strip of land. There were four tracks without pavement between and no space for vehicular traffic. In 1917 the railroad company reconstructed the tracks, laying three tracks instead of four and placed paving between the tracks but not outside of the rails. In 1923 and the years following the company paved other portions of the so-called street until now it is paved for its full width but without curbs or walks. Some of this paving was done at the oral request of the Transit Commission in order to afford passengers better facilities. In 1931 the fourth track was again constructed. During all these years the railroad company continued to use this strip of land and the adjoining land for its terminal operations.

Land on each side of the so-called street was conveyed by the railroad company to individuals in 1919 and 1920 by deeds which excluded any part of this strip. The city does not maintain lights thereon, but it is lighted by the railroad company.

The prosecution relies mainly upon the maps above referred to showing Palmetto street at the location in question to establish that the land in question constituted a public street or highway. There was produced also another map setting forth the changes in the street system of the city, duly approved by the Board of Estimate and Apportionment, and including Palmetto street covering the land in question.

The People also furnished evidence as to the use of the street by the public and of certain activities by the city. In effect, the evidence as to use was that witnesses had seen extensive use of this street by vehicles as well as by pedestrians; that certain owners of the abutting property conducted business thereon and used the street for exits and entrances; that the area in question was patrolled by the New York City Police Department; that it was

used by the motor patrol and by police officers each hour; that " No Parking " signs were placed on the street by the police department; that in April, 1934, on four days employees of the city were engaged in laying an ash walk on a portion of the premises and that a city fire hydrant was placed in the area. Basing its claim on that evidence, the prosecution contends that the land in question was a public street, *first*, because of dedication and acceptance, and, *second*, upon a prescriptive right under section 189 of the Highway Law (Cons. Laws, ch. 25). As to the latter ground, it is clear under the decisions that use alone does not make a public highway. Section 189 in effect states that all lands which shall have been used by the public as a highway for a period of twenty years or more shall be a highway with the same effect as if duly laid out and recorded as one. In *People* v. *Sutherland* (*supra*, p. 91) this section was construed and the court said: " On the other hand, mere travel by the public over a country road not laid out or dedicated by the owner without more has never been held to be use of the road by the public *as a highway*, under section [then] 209 of the Highway Law. Many private roads are thus used by the public without becoming public highways. The road must not only be travelled upon by the public but it must also be kept in repair or taken in charge and so adopted by the public authorities. ' We think all this is implied in the words *used as public highways*.' * * * The burden was on the People to establish that the road had been taken charge of by the public authorities and treated and regarded by them as a public highway like the town highways generally, for the period of twenty years or more, so that the town became responsible for its condition (Highway Law, § 74), and persons obstructing the same became subject to punishment under Penal Law, section 1530."

This brings us to the question of dedication and acceptance. Whether land has been dedicated by the owner to the use of public travel and whether it has been

accepted for that purpose involves the intent and acts of the owner and the intent and acts of the municipality.

" The intent of the respective parties must be followed by appropriate and characteristic acts upon the part of each party." (*Flack* v. *Village of Green Island*, 122 N. Y. 107, 113.) " The owner's acts and declarations should be such as to manifest an intention to abandon or devote his property to the specific public use." (*Cook* v. *Harris*, 61 N. Y. 448, 454.) " ' Where a plot is made and recorded, the requisite intention is generally indisputable.' (Dillon on Mun. Corp. § 636.)" (*Flack* v. *Green Island*, *supra*, p. 114.) " To constitute a public highway by dedication, there must not only be an absolute dedication, a setting apart and a surrender to the public use of the land by the proprietors, but there must be an acceptance and a formal opening, by the proper authorities or a user." (*Niagara Falls Suspension Bridge Co.* v. *Bachman*, 66 N. Y. 261, 269.) " In the case of a highway, the public must accept the highway, and before such acceptance the dedication may be revoked. Such acceptance may be proved by long public use, or by the positive acts of the public authorities in recognizing and adopting the highway." (*Cook* v. *Harris*, *supra*, p. 456.)

The trial court may have been justified in finding that there was a dedication of the strip of land in 1865 by Wyckoff and a rededication in 1871 by Ginder. There is, however, no proof in this record that there was any acceptance prior to the time the Bushwick Railroad became seized of the land. From 1881 the railroad and its successors used the land within the described street for its terminal operations. Such use was repugnant to the idea of a continuing dedication. In the face of this continued use, the maps subsequently drawn by the railroads cannot be construed as a dedication. No doubt the railroad company's route map of its lines showing this area as a street was made for the purpose of identifying the location of its property. Palmetto street above

and below the disputed strip is a public street, and the use of that name in connection with this area is understandable.

Even though there had been a dedication, the facts in this record are not sufficient to show an acceptance by the city. The premises were used as a terminal, and between thirty and forty thousand persons were accommodated there daily. Use of this area by pedestrians not on business with the carrier could be inferred to have been made with the permission of the railroad. Such use by vehicles may have been likewise permitted. The only acts of the city, cited in support of an acceptance, are: the use of the strip by travelers; the placing of the fire plug; the policing of the area; the placing of " No Parking " signs, and the isolated instance of putting an ash sidewalk on a portion of the premises. In view of the fact that this district was built up and that so many people use it every day on railroad business, these acts do not evidence an intent to accept the street, particularly after such a lapse of time.

What the city has failed to do is even more significant than what it has done affirmatively. This section is a closely built up part of the city. The streets surrounding it are paved, lighted, and have curbs and sidewalks. Yet this strip of land was never paved by the city, sidewalks were not built thereon, nor were lights placed thereon by the city. Crowds of people were daily accommodated on the strip by the railroad company. Besides all this, it has for many years used this land in this manner without objection on the part of the city.

The judgments should be reversed and the information dismissed.

CRANE, Ch. J., LEHMAN, O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgments reversed, etc.