Fbank A. Gulotta, J.
Plaintiff conducts an 1‘ Associated Food Market” at certain premises owned by him in East Atlantic Beach, New York. The parcel is bounded on the north by Beech Street, on the west by Brookline Avenue, and on the east, he alleges, by Nevada Avenue. Defendants, on the other hand, claiming the westerly half of Nevada Avenue adjoining plaintiff’s premises is not a public street but private property to which they have title, and objecting to his use thereof for loading and unloading huge trucks, have erected a fence four feet high in this disputed strip, beginning at a point about 25 feet south of Beech Street and running along the edge of the sidewalk parallel with plaintiff’s building to the rear line thereof, thereby barricading plaintiff’s free access to Nevada Avenue and hampering the delivery, loading and unloading of merchandise at this point. In this action, plaintiff challenges defendants’ right to erect and maintain the fence in what he claims to be a public street and asks for an injunction mandating its removal. Defendants have counterclaimed in trespass for damages. »
The facts disclose that on November 13, 1923, Long Beach on the Ocean, Inc., the then owner of this entire area, caused a map to be made and filed in the Nassau County Clerk’s office known as “Map No. 2, West End, Long Beach, N. Y. etc.” and filed as Map No. 536, on which is laid out, inter alia, Nevada Avenue, the street in question. There is attached to this map a certificate of Archibald G. Patterson, Superintendent of Highways of the Town of Hempstead to the effect that he consents that the map “ showing — Nevada Avenue width thirty nine feet- — be accepted and filed with the County Clerk of the County of Nassau.” At that time this entire territory formed part of the Town of Hempstead. Three years later, Long Beach, which had been chartered as a city in 1922, had its westerly boundary extended, by legislative act, to a line 19% feet west of the easterly side of Nevada Avenue. (L. 1926, ch. 448.) The City of Long Beach thereupon paved this easterly half of Nevada Avenue and has since maintained it as a public street. *553 The westerly half remained in its original sandy state until about 1951 when one Michael J. Sullivan, plaintiff’s predecessor in title, had it packed with cinders, at his expense.
Bordering the west side of Nevada Avenue and forming the westerly boundary of the above-mentioned Map No. 2, is a one-foot reserved strip running from Reynolds Channel to the Atlantic Ocean. To the west and contiguous to this one-foot strip is another filed map covering property owned by Sheer-Long Beach Co., Inc. The effect of this reserve strip was to deny to owners on the Sheer-Long Beach Map any direct access to Nevada Avenue.
In 1941, Long Beach on the Ocean, Inc. went into bankruptcy and Michael J. Sullivan purchased from the trustee in bankruptcy by quitclaim deed dated October 19, 1950, the westerly 19% feet of Nevada Avenue together with the one-foot strip adjoining it on the west. There is an addendum to this deed subscribed to by Michael J. Sullivan reading as follows:
“ The above parcel of land was purchased for the purpose-of widening Nevada Avenue to 39 ft. and shall remain a highway forever and ever with NO encumbrances whatsoever on it,
“ Exceptions — Lots 33-34 Brookline Ave. E. Atlantic Beach, shall be guaranteed trespass upon Nevada Ave. Property,—
(signed) Michael J. Sullivan.”
At the time of this acquisition Michael J. Sullivan was the owner of lots 35 to 37 plus the northerly 20 feet of lot 34 on the Sheer-Long Beach Map, all of which adjoins the one-foot strip on the west. This is the property later acquired by plaintiff. ■ The allusion to a right of trespass [sic] upon Nevada Avenue is obscure. Perhaps the word intended was ‘ ‘ egress ’ ’ but even the need for this is not clear since the same deed conveyed the one-foot strip. The first part, however, is crystal clear and certainly purports no right to eliminate or obstruct Nevada Avenue.
On July 26, 1954, the defendants acquired by quitclaim deed from Michael J. Sullivan the westerly 19% feet of Nevada Avenue from Beech Street to the Atlantic Ocean. This deed, ineptly drawn, following the deed into Sullivan from the trustee, eliminates the one-foot strip from the general description and mistakenly fails to do so from the metes and bounds description which follows. I say “ mistakenly ” because on January 14, 1955 when Sullivan sold plaintiff the “.supermarket premises ” which was on the Sheer map, he also conveyed to him, by separate deed, the one-foot strip. This latter deed included a right to use the surface of Nevada Avenue.
*554 While as a general principle of construction, where there is a variance between a general description and the metes and bounds description the latter will control, this is not invariably the case. These principles are merely guides to ascertain the intention of the parties. (Green v. Horn, 207 N. Y. 489, 499; Brookman v. Kurzman, 94 N. Y. 272, 276.) As was stated in Darling v. Alexander (130 App. Div. 85, 87): “In construing deeds, as is true as to other contracts, their interpretation is not always to he determined by the precise language of the description, but reference may be had to the accompanying facts and circumstances in order to ascertain the intention of the parties. (Mott v. Eno, 181 N. Y. 346, 373.) ”
In addition to condemnation, with which we are not here concerned, the time-honored methods by which a public street may be created are (1) by an offer of dedication from the owner of the property followed by an acceptance by the proper public authority, or (2) by public user for the period necessary for the ripening of a prescriptive right (formerly 20 years under section 189 of the Highway Law, but effective April 20, 1959 reduced to 15 years). Since there was not sufficient proof adduced upon the trial to substantiate a claim under this latter method, we may confine our inquiry to the former.
The first method is in the nature of a contract involving both an offer by the owner and an acceptance by the municipality and depends upon appropriate acts by each evincing such an intent. (People v. Brooklyn & Queens Tr. Corp., 273 N. Y. 394.) As to the offer, the court in this latter case said, “ where a plot is made and recorded, the requisite intention is generally indisputable.” (Citing Dillon, Municipal Corporations, § 636, renumbered § 1079 in the 5th edition.) This is the situation here.
Defendants have directed their attack more to the sufficiency of the acceptance rather than to the competency of the offer, relying on section 278 of the Town Law. That section does indeed provide in relevant part, that a street shown on a plat shall remain a private street until 11 formally accepted as a street by resolution of the town hoard”. This section was applied without comment in Carman v. Hewitt (105 N. Y. S. 2d 239, mod. 280 App. Div. 866, affd. 305 N. Y. 718) to a map filed in 1909, although section 278 in that form was not enacted until 1938. Its predecessor was' section 149-o of the Highway Law as added by the Laws of 1927, and this section contained no such provision, nor does it appear to have been derived from any earlier section. For this reason, I am unable to follow that case.
*555 In examining the laws in effect in 1923, I find no specific statutory authority, either for or against the procedure followed by the Town Superintendent of Highways in accepting this map. At that time section 191 of the Highway Law entitled: “Highways by dedication”, provided that whenever land is dedicated for highway purposes, the Town Superintendent with the consent of the Town Board might make an order laying out such highway. This provision has been continued in section 171 of the present law indicating that the Legislature conceived that there is a difference between “laying out a street” and “accepting it”. If both meant the same thing there would be no need for the above-quoted portion of section 278.
It is apparent from a perusal of section 47 of the Highway Law of that time, now section 140, which enumerated the powers and duties of Town Superintendents, that their powers were quite broad, but that they deal more with the upkeep and maintenance of highways, than with the establishment of new ones. This distinction was pointed out in Oswego v. Oswego Canal Co. (6 N. Y. 257, 264) where it was said: “ The duty of causing roads to be described and recorded evidently applied to such roads as had previously been laid out by public authority, and to such as had been used as highways for twenty years; and not to roads which had been laid out by individuals on their own lands. The whole structure of the highway acts forbids the idea that the town is bound to adopt and to keep in repair every road which an individual may think proper to open through his own land, although he may dedicate it to public use in such manner as to preclude himself from shutting it up.”
So if this case involved the question of whether to impose on the town the duty and expense of maintaining this street, contrary to its wishes, the answer would have to be in the negative.
It does not follow from this however, that one succeeding to the interest of the dedicator and whose immediate predecessor in title had agreed to keep this land forever open as a street, can now erect a fence in it. See Vogeler v. Alwyn Improvement Corp. (247 N. Y. 131) where it was stated: “Acceptance of title to the land subject to that restrictive covenant imposes upon the grantee an obligation which a court of equity will enforce not only against the grantee, but against any subsequent owner who takes with notice of the covenant. (See Pomeroy’s Equity Jurisprudence, volume 2, section 689.) ”
While cases such as Niagara Falls Suspension Bridge Co. v. Bachman (66 N. Y. 261) and People v. Brooklyn & Queens Tr. *556 Corp. (273 N. Y. 394, supra) in discussing the establishment of highways by dedication and acceptance add another element viz., formal opening by the proper authorities or a user, there is a question in my mind as to whether there are actually three factors, or merely the substitution of a third, where one of the other two is doubtful. In neither of these cases were the first two elements unquestionably present. In the first case, there was an expressed reservation of rights with respect to the locus in quo on the face of the filed map, and in the second case, there was no formal act of acceptance, so that acts of user were in effect sought to be equated to acceptance. Thus it is questionable that where offer and acceptance are unequivocally present, opening and user are also necessary. See, also, People v. Underhill (144 N. Y. 316, 323-324), holding: “We are of the opinion, however, that there was no sufficient evidence of an acceptance of this dedication either by way of user or by any formal and conclusive action on the part of those public authorities of the village of Sing Sing who would have authority to accept a dedication to the public * * * There being no user, there must have been proof of an acceptance by some formal and unambiguous action on the part of the authorities of the village having that power and showing unmistakably an intention to accept the land thus dedicated ”.
This point of view is fortified by a consideration of section 205 of the present Highway Law, formerly section 234 of the Highway Law of 1909, which provides that a highway which has not been opened and worked within six years from the time of its dedication shall be deemed abandoned. This section would thus clearly imply that a dedication can be accepted independently of any opening up or user, else there would be no need for such a section, for until it is accepted the offer can be revoked. Stillman v. City of Olean (228 N. Y. 322, 328) puts it this way: “ The same indisputable principles are applicable to that as to any other voluntary offer. At any time before it was accepted or acted upon or rights had accrued thereunder it could be withdrawn and annulled.”
As to the use of this section to defeat plaintiff’s action, because of the failure of the Town of Hempstead to open up and work that portion of the street within its jurisdiction, the law seems to be well settled to the effect that abandonment in this sense means abandonment of a whole street, or even a portion of its length, but never a portion of its width (Mangam v. Sing Sing, 26 App. Div. 464, affd. 164 N. Y. 560) and widthwise, one half of this street has been paved and used since 1926.
*557 Therefore, whether this be regarded strictly as a case of dedication of a public street or merely as an offer to do so followed by a defective acceptance, so that it did not in fact become a public street, the subsequent sale of property from the map to purchasers of which the plaintiff, by virtue of his purchase of the one foot-strip, is one, in my opinion, precludes these defendants as successors to the developer, from obstructing that street and using it for their private purposes. This point is developed with clarity and precision in Lord v. Atkins (138 N. Y. 184) where at page 191 we find this statement : “ These facts and circumstances justified the finding of the trial court that the locus in quo had become a public street or highivay by dedication as to these parties, though the duties and burdens of maintaining it are not imposed upon the public until accepted in some way. It is Avell settled that when the owner of land lays it out into distinct lots, Avith intersecting streets or avenues, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When, in such a case, a lot is sold bounded by a street, the purchaser and his grantees have an easement in the street for the purposes of access, Avhich is a property right. (Story case, 90 N. Y. 145; The Trustees, etc. v. Cowen, 4 Paige, 510; Wyman v. The Mayor, 11 Wend. 487; Bissell v. N. Y. C. R. R., 23 N. Y. 61; White’s Bank, etc., v. Nichols, 64 id. 65; Taylor v. Hopper, 62 id. 649; Huttemeier v. Albro, 18 id. 48.) ”
■ If there are problems of sanitation in connection Avith plaintiff’s disposal of refuse, there are adequate laws to deal Avith that, which should make unnecessary the rather drastic remedy Avhich the defendants have adopted here.
Judgment is granted in favor of the plaintiff and the counterclaim dismissed, all without costs.
This decision contains the essential facts in accordance with section 440 of the Civil Practice Act. Settle judgment on notice.