Donald S. Taylor, J.
This is a suit in equity tried before the court without a jury. Plaintiffs seek a judgment declaring Kinberg Court, a street located in Ellenville, New York, by common-law and statutory dedication and acceptance to be a public highway 50 feet in width, about 199 feet in length with a cul-de-sac or turn around having a 50-foot radius at its westerly end. They also seek a declaration that they have a perpetual private easement therein for highway purposes as abutting owners whose title is derived from a common grantor through a conveyance made by him which referred to a map of the subdivision of his premises upon which Kinberg Court was laid out as a means of access to the lots designated thereon. Injunctive relief to prevent interference with the exercise of the rights for which they contend is also prayed for.
In 1954 defendant Morris Kinberg was the owner of a parcel of land located at the northwest corner of Tuthill Avenue and Church Street in that village. For the purpose of subdividing the plot into building lots for residential purposes, he constituted his son, the defendant Philip Kinberg, his attorney in fact with general power and authority to do, in his name, what was necessary to accomplish that result. On December 17, 1954 Philip Kinberg appeared at a meeting of the Board of Trustees *49 of the village. He was accompanied by an engineer who had prepared a preliminary layout of the proposed development. Sketched thereon was an unnamed street 40 feet wide which extended westerly from Church Street about 199 feet and terminated in a cul-de-sac having an indicated radius of 50 feet on which abutted 11 numbered lots into which the plot had been subdivided. The proposed street was not defined by metes and bounds and could not have been plotted in the field from the sketch. No description of it had been prepared by the engineer. The official minutes of the meeting kept by the Clerk of the village indicate that considerable discussion of the matter of the development took place between Kinberg and the members of the board. This had to do with the widening of the proposed street from 40 to 50 feet, increasing the width of Church Street by 10 feet through purchase of a portion of the Kinberg property, the acquisition of a 10-foot strip owned by a board of education and the general subject of drainage. Finally, a motion “ that the Village Board approve the location of the proposed new street on the Kinberg proposed development” was passed by a majority vote of its members. This was the only time that the developer had any communication with the village authorities in reference to the proposed subdivision. The engineer’s sketch was left with the board at the conclusion of the meeting.
Subsequently a detailed map of the subdivision which is dated January 18, 1955, and which reduced the number of lots to 9, was prepared by the same firm of engineers and thereafter revised by them on April 13,1955. This map delineated a street 50 feet in width, approximately 199 feet in length which commenced in Church Street 110 feet north of Tuthill Avenue and terminated at its westerly end in a turn around having a 50-foot radius. It was denominated thereon as 1 ‘ Kinberg Court ’ ’. The designated lots numbered from 1 to 9 bordered the court. Kinberg applied to the Ulster County Department of Health on June 3,1955 for the approval of the subdivision as shown on the final revised map and obtained such on July 26,1955.
On March 15, 1955 Kinberg conveyed to one Levine lot number 2 thereon and described it in the granting instrument by reference to the map dated January 18, 1955 and to the street designated thereon as “Kinberg Court”. On March 2, 1956 he also conveyed an adjoining 10 feet of lot number 4 to the same grantee. The deed to this strip also fixed Kinberg Court as its southerly boundary line.
By deed dated October 6,1955 Kinberg conveyed to plaintiffs contiguous lots numbered 1 and 3 of the subdivision, the north *50 erly boundary of which extended westerly from Church Street along Kinberg Court a distance of 165 feet. In the description of these lots reference was made to the “ Kinberg Subdivision ” and to their respective lot numbers as well as to the street shown on the map as ‘ ‘ Kinberg Court ’ ’. Thereafter plaintiffs constructed a costly home on the premises, the front of which faces Tuthill Avenue. Its rear entrance is by way of Kinberg Court.
Neither of the deeds to which reference has been made expressly conveyed to the grantees the right to use Kinberg Court as a means of ingress to and egress from their premises. At the time of their execution and delivery, Kinberg Court was a roughly graded street of gravel surface which extended approximately the length of plaintiffs’ northerly or rear boundary line. The cul-de-sac was not physically existent and, of course, not in use. A building formerly used by Kinberg as a boarding house encroached to some extent upon its ¡ ‘ paper ’ ’ area.
By deed dated June 27,1957 Kinberg conveyed to the defendants Launer the remaining lots in the development and the bed of Kinberg Court. Thereafter pursuant to section 144 of the Village Law at a meeting of the Village Board on August 12, 1957 the defendants Launer offered to dedicate to the Village of Ellenville for a public street that portion of it which lies west of Church Street for a distance of 165 feet. An executed deed and map accompanied their offer. Following a report by the village engineer the Board of Trustees accepted the offer and directed the recordation of the proffered deed.
Defendants Launer then proceeded to demolish the former boarding house and to build a new home part of which encroaches for a distance of 40 feet into the space indicated on the revised map as the turn around. This is the obstruction which plaintiffs seek to have removed. The house is set back between 50 and 60 feet from Kinberg Court as shown on the dedication map filed by the defendants Launer with the Village Board.
That Kinberg Court for a distance of 165 feet west of Church Street, by reason of formal dedication by the defendants Launer, is now a public street is not disputed. Essentially, this controversy centers in the right of plaintiffs to use, as a means of rear access to their premises, the mapped portion thereof which lies west of their westerly boundary line, including the cul-de-sac. The first question which calls for consideration is whether or not Kinberg Court for this distance is also a public street by Kinberg’s dedication. The plaintiffs contend that the proceedings of the meeting of the Village Board of Trustees on December 17, 1954, combined with the filing of the revised map with *51 the Department of Health, were tantamount to a statutory offer by Kinberg to dedicate the court in its entirety and that the board’s favorable action on the motion of Trustee Thayer constituted an acceptance thereof on its part. A good paraphrase of the statute’s (here, Village Law, § 144) procedural steps which are required to be followed to dedicate land for a village street is found in Opinion No. 4668 of the State Comptroller (6 Op. St. Comp., 1950, pp. 209-211) where it was said: “ (1) The owner of the land should make an offer in writing to dedicate certain described lands as a village street. This offer should be transmitted to the village board of trustees. (2) At a duly convened meeting, the board of trustees should consider the offer, which should be entered in the minutes. If it is determined that the offer should be accepted, a resolution to this effect must be adopted. The resolution should indicate whether all or only a portion of the land described in the offer is being accepted. The resolution also must give a description of the land accepted. It is to be noted that no street less than two rods in width can be accepted by dedication, unless the resolution of acceptance is passed by a unanimous vote of the board. (3) After the resolution accepting the dedication has been adopted, the owner of the land to be dedicated may execute a deed conveying title to the village. The deed should be delivered to the village clerk, and a resolution of the village board should be adopted accepting the conveyance. The law does not require that the deed contain any warranties. Inasmuch as a dedication under this section is a gift, the deed should not recite any consideration. (4) When the deed has been accepted by resolution of the village board, it should be recorded in the county clerk’s office in the same manner as are other conveyances.” No offer by Kinberg to dedicate the street, or any portion of it, within the statute’s frame can be spelled out here. The undisputed proof clearly indicates otherwise. But even assuming that the discussions which took place at the meeting and the filing of the revised map with the Department of Health could be deemed an offer to dedicate, as plaintiffs claim, there is no proof, as required, that the Board of Trustees determined to accept the offer. At most, the Village Board simply approved by resolution the location of the proposed street. This, too, was insufficient to establish a statutory acceptance. The language of Matter of City of New York (E. 177th St.) (239 N. Y. 119, 130) is appropriate: “ Approval by the board of estimate and apportionment means merely ‘ to pass a favorable opinion thereon. ’ Acceptance indicates a meeting of the minds, an agreeing to an offer. Acceptance does not follow from mere approval. Approval is proper *52 when the layout of the land is in general harmony with the scheme of the city as to width of streets, connection with public highways and the like, so that if the plotted streets are offered to the city in the future they may be accepted as a part of the street system of the city.” (See, also, People v. Brooklyn & Queens Tr. Corp., 273 N. Y. 394, 401; People v. Underhill, 144 N. Y. 316, 323; Koff v. Frank, 22 Misc 2d 551.)
Plaintiffs further claim that the proof demonstrates an unmistakable intent by Kinberg to dedicate the land in dispute to public use under the common law and an acceptance of his offer by the municipality. The rule governing this type of dedication of a village street is also stated in Matter of City of New York (E. 177th St.) (supra, pp. 127-128) as follows: “Where the owner of land in a village lays out the same into lots and streets, makes and files a map or plat thereof, and sells and conveys lots by the map, bounded upon the streets as delineated thereon, this does not necessarily make them public highways; the acts and declarations of the party must be unmistakable in their purpose, and decisive in their character, showing an intent to dedicate the land, absolutely and irrevocably to public use; and there must also be an acceptance and formal opening by the public authorities, or a user. (Niagara F. Susp. Bridge Co. v. Bachman, 66 N. Y. 261.) ” The intention of village authorities to accept property as a street or highway without formal action is never presumed. (Johnson v. City of Niagara Falls, 230 N. Y. 77, 74; Putnam Val. Lbr. & Supply Corp. v. Duell, 82 N. Y. S. 2d 407.)
Applying these rules, the evidence fails to establish a common-law dedication of the portion of the street which is in dispute. Upon his appearance before the Board of Trustees, Kinberg obviously was seeking information along broad lines based on a tentative and incomplete development plan. In approving by resolution the location of the proposed street, it is evident that the trustees so understood his mission. One of them, presently the Mayor of the village, so testified and the official minutes of the meeting bear him out. Moreover, it appears from the testimony of the engineer who accompanied Kinberg that several sketches had been prepared for consideration of the Village Board, none of which was sufficiently definitive and complete as to form the basis of a dedicatory offer. Nor was the portion of the street now in dispute ever formally opened and maintained by the public authorities or used for highway purposes by anyone, least of all the public. (Goldrich v. Franklin Gardens Corp., 282 App. Div. 698.) My conclusion is that there was neither a *53 statutory nor a common-law dedication of the land involved in this controversy.
There remains also to be considered the claim of the plaintiffs to a private easement by virtue of which they assert a perpetual right of way over the part of Kinberg Court not now formally dedicated to public use which arises out of the fact that the conveyance to them originated in a common grantor and was made with reference to a map upon which the street was laid out. “ It is well settled that when the owner of land lays it out into distinct lots, with intersecting streets or avenues, and sells the lots with reference to such streets, his grantees or successors cannot afterwards be deprived of the benefit of having such streets kept open. When, in such a case, a lot is sold bounded by a street, the purchaser and his grantees have an easement in the street for the purposes of access, which is a property right.” (Lord v. Atkins, 138 N. Y. 184, 191.)
It is insisted by plaintiffs that they are entitled to the application of this rule of law to the portion of the mapped street the rights in which are in dispute here. While it is apparent that the doctrine of implied easements is generally applicable to the circumstances of this case, yet it by no means follows, as is contended by plaintiffs, that the easement extended through the whole of Kinberg Court as shown on the grantor’s map.
Wliat was said in Reis v. City of New York (188 N. Y. 58, 72-73) is apposite: “ The doctrine of dedication and its limitations, as they seem to me to be applicable to the case at bar, are well stated by the Court of Appeals of Maryland in Hawley v. Mayor, etc. of Baltimore (33 Md. 270, 280) as follows: ‘ * * * The doctrine of implied covenants will not be held to create a right of way over all the lands of a vendor which may lie, however remote, in the bed of a street. The lands must be contiguous to the lot sold, and-there must be some point of limitation. The true doctrine is, as we understand it, that the purchaser of a lot calling to bind on a street, not yet opened by the public authorities, is entitled to a right of way over it, if it is of the lands of his vendor, to its full extent and dimensions only until it reaches some other street or public way. To this extent will the vendor be held by the implied covenant of his deed and no further.’ ”
In Matter of City of New York (E. 177th St.) (supra, p. 131) the limitations of the doctrine of dedication were expressed in this language: “ The easements acquired by such grantees do not extend to every street shown on the map but only over such streets as afford access to the city system of public streets. The *54 implied easements are of necessary access and egress merely. The grantees are not to be shut off from the public streets. (Reis v. City of New York, 188 N. Y. 58.) East One Hundred and Seventy-seventh street as laid out on the map is not necessary for such access and egress. It might be closed without substantial damage to such lot owners so long as the intersecting streets remained open. They are not entitled to have East One Hundred and Seventy-seventh street kept open for their use for its entire length over claimant’s land. ’ ’
It is to be noted that none of the property of plaintiffs abuts upon that part of Kinberg Court which constitutes the turn around shown on the development map. The portion of the court which the rear of their premises borders for its entire length of 165 feet now is a public street by formal dedication and acceptance. It is apparent that they have no grievance as such abutting owners. Since the street is clear for ingress and egress for this distance and at its only open end connects with the sole available public street, I conclude that plaintiffs have not been deprived of any private easement to which they became entitled by reason of their purchase with reference to the subdivision map. (Matter of City of New York [Sedgwick Ave.], 213 N. Y. 438; Matter of City of New York [E. 177th St.], supra, p. 131; Reis v. City of New York, supra.)
In the deeds by which Kinberg conveyed their respective lots to plaintiffs and Levine there were inserted the following five covenants: “ 1. That no building shall be constructed within twenty (20) feet of the street line of Kinberg Court. 2. That the number of buildings to be constructed on any lot shall be restricted to one one family dwelling house and a detached garage. 3. That no business, trade or profession shall be carried on or operated on the premises. 4. That no animals shall be housed other than household pets. 5. That no dwelling house shall be erected having a construction value of less than five thousand dollars ($5,000.00).” It appears that those numbered 1 and 2 were omitted by mistake from the deed by which the remainder of the subdivision was conveyed to the defendants Launer. For this and the further reason that the restrictions were imposed pursuant to a common development plan, their premises should be declared subject to all five of the covenants in question. (Chesebro v. Moers, 233 N. Y. 75; Korn v. Campbell, 192 N. Y. 490, 495, motion for reargument denied 193 N. Y. 626; Post v. Weil, 115 N. Y. 361, 373; Tallmadge v. East Riv. Bank, 26 N. Y. 105; Finn v. Morgan Is. Estates, 124 N. Y. S. 2d 645, mod. on other grounds 283 App. Div. 1105, motion for reargument denied 284 App. Div. 850.)
*55 Plaintiffs’ final contention is that the home which the defendants Launer have erected on their property violates the pertinent 20-foot restrictive covenant. Injunctive relief to compel its removal is sought. All of Launers ’ building is more than 20 feet from any portion of Kinberg Court in which either the public or the plaintiffs have any interest. In these circumstances no basis for equitable relief is presented.
In the light of the result at which I have arrived, the death of the defendant, Morris Kinberg, after the institution of the suit and before its trial would seem to be of no significance. (Civ. Prac. Act, § 478.)
Accordingly, judgment without costs to any party is granted as follows: (1) in favor of plaintiffs against the defendants Launer declaring the latter’s premises subject to the restrictive covenants above numbered 1 and 2 and (2) dismissing the complaint on its merits against the defendants Kinberg and the Village of Ellenville.
The above constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.