In the Matter of the Application of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property Required for the Opening of East One Hundred and Seventy-seventh Street in the Borough of The Bronx.

THEODORE MINZESHEIMER, Appellant.

Street opening — New York city — dedication and acceptance of streets — making and filing of map showing proposed streets not necessarily a dedication of streets to public — intent must be shown — no express provision in section 334 of Real Property Law or in section 1540 of charter of city of New York that filing of map by landowner and approval by city authorities shall constitute a dedication of streets shown thereon — when filing of map by landowner showing streets, proceedings for the opening of which were then pending, and approval thereof by authorities, not a bar to an award to him of substantial damages for the taking of land necessary for the opening of said street — private easements of access to public streets.

1. Under the common law the dedication and acceptance of streets are to be proved and disproved by the acts of the owner and the

circumstances under which the land has been used. Both are questions of intention. Where the owner of land lays out the same into lots and streets, makes and files a map or plat thereof, and sells and conveys lots by the map, bounded upon the streets as delineated thereon, this does not necessarily make them public highways; the acts and declarations of the party must be unmistakable in their purpose, and decisive in their character, showing an intent to dedicate the land absolutely and irrevocably to public use; and there must also be an acceptance and formal opening by the public authorities, or a user.

2. Nothing contained in section 334 of the Real Property Law (Cons. Laws, ch. 50) nor in section 1540 of the charter of the city of New York, as amended by chapter 513 of the Laws of 1916, expressly provides that the filing of a map by a landowner and the approval thereof by the city authorities shall constitute a dedication of streets shown thereon to public use. Under section 334 of the Real Property Law, the filing of a sales map is made compulsory but that filing constitutes neither a dedication nor an offer of dedication. Nor has section 1540 of the city charter gone further than to delimit the right of the owner to file this map before making conveyances by reference thereto.

3. Where, during the pendency of proceedings for the opening of a street in the city of New York, a property owner, while engaged in giving proof of its claim for a substantial award, filed a map in order that lots might be sold on the proposed streets without incurring a penalty under section 334 of the Real Property Law, the map expressly stating that the street in question was laid out thereon " as now being legally opened," and said map was approved by the borough president and by the chief engineer of the board of estimate and apportionment, a contention by the city, in the street opening proceeding, that under the statutory provisions quoted the lands in question have been irrevocably devoted to street purposes and that the intention of the parties may not be inquired into; that the filing of the map conclusively and as matter of law negatives the intention to claim damages for the taking of property in the condemnation proceedings and that the landowner in its haste to sell lots on the proposed streets has forfeited the right to damages which it was contemporaneously asserting before the commissioners, cannot be sustained.

4. Nor can a contention that claimant has created private easements in the street in question as laid out on the map and that it is, therefore, entitled to a nominal award only, be upheld, where the lots conveyed front on other intersecting streets shown on its map, which do not abut upon the said street, are not contiguous thereto and do not require it for access or egress. The right of purchasers of lots

fronting on intersecting streets to cross the proposed street in reaching the city streets may reduce the value of the land taken, but not so substantially as to make the award nominal in amount.

*Matter of City of New York (East 177th Street)*, 209 App. Div. 108, reversed.

(Argued October 1, 1924; decided November 25, 1924.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 2, 1924, which affirmed an order of Special Term sustaining objections to the confirmation of the report of commissioners in street opening proceedings and directed the return of the report to the said commissioners for revision and correction.

The following questions were certified:

1. Was there a proffer of dedication of the damage parcels 4, 5, 5a, 7 and 7a to the public by the filing of a map by the owners, showing lots fronting on East One Hundred and Seventy-seventh street?

2. Did the approval of such map by the chief engineer of the board of estimate and apportionment, appointed for this work by resolution of said board, constitute an acceptance of the offer of dedication?

3. Does the filing of a map, pursuant to section 1540 of the Greater New York charter, as amended by Laws of 1916, chapter 513, which map has been approved by the city's chief engineer, constitute a dedication and acceptance of the land owned by the landowner filing the map, which falls within the lines of the streets shown on said map or the city's final map?

4. Were private easements created by the conveyances made by the East One Hundred and Seventy-seventh Street Company where none of the lots conveyed by it fronted or abutted upon or were contiguous to East One Hundred and Seventy-seventh street, and none of them required East One Hundred and Seventy-seventh street for access or egress?

5. Is section 1540 of the Greater New York charter,

as amended by Laws of 1916, chapter 513, invalid and unconstitutional, as involving the taking of private property without just compensation and in violation of due process of law?

*I. Maurice Wormser, Seymour Mork* and *Ralph F. Kane* for appellant. No public easements could be created unless there were both an offer of dedication and also an acceptance thereof by the city. An offer of dedication, until and unless accepted, could not effect a complete dedication any more than could an acceptance without an offer. (*Flack* v. *Vil. of Green Island*, 122 N. Y. 107; *People* v. *Underhill*, 144 N. Y. 316; *Matter of City of New York* [*Roosevelt Ave.*], 186 App. Div. 457; *Matter of Olinger*, 160 App. Div. 96; *Stillman* v. *Olean*, 161 N. Y. Supp. 591; *Matter of City of New York* [*64th St.*], 183 App. Div. 708.) The approval of the city's chief engineer of the map submitted by the East One Hundred and Seventy-seventh Street Company, prior to its filing, did not constitute an acceptance of the offer of dedication which the city contends resulted from the filing of the map. (*Moore* v. *Mausert*, 49 N. Y. 322; *Matter of Livingston St.*, 82 N. Y. 621; *People* · v. *Massieon*, 279 Ill. 312; *Klein* v. *Reinhardt*, 163 Ill. App. 257; *Hoerrmann* v. *Wabash Ry. Co.*, 141 N. E. Rep. 289; *Plumer* v. *Johnston*, 63 Mich. 165; *Brown* v. *Scruggs*, 141 Mo. App. 632.) The inference of an offer of dedication which is ordinarily to be drawn from the filing of a map cannot and should not be drawn in the case at bar. (*Matter of City of New York* [*East River Park*], 184 App. Div. 509; *Flack* v. *Green Island*, 122 N. Y. 107; *Reis* v. *City of New York*, 188 N. Y. 58; *Regan* v. *Boston G. L. Co.*, 137 Mass. 37; *People* v. *Massieon*, 279 Ill. 312.) The sales and conveyances according to the map could, at most, create private easements · as distinguished from easements in the public. (*Nichols Copper Co.* v. *Connolly*, 208 App. Div. 667; *Matter of City of New York*

[*Sedgwick Ave.*], 213 N. Y. 438; *Matter of 116th St.*, 1 App. Div. 436.) No private easements were created by the conveyances made by the East One Hundred and Seventy-seventh Street Company, since none of the lots conveyed fronted, or abutted upon, or were contiguous to East One Hundred and Seventy-seventh street, and none of them required East One Hundred and Seventy-seventh street for access or egress. The fourth certified question should, therefore, be answered in the negative. (*Reis* v. *City of New York*, 188 N. Y. 58; *Nichols Copper Co.* v. *Connolly*, 208 App. Div. 667.)

*George P. Nicholson*, Corporation Counsel (*Joel J. Squier* and *William B. R. Faber* of counsel), for respondent. The awards contained in the report of the commissioners for parcels damage Nos. 4, 5, 5-a, 7 and 7-a, aggregating the sum of $87,496, are excessive for the reason that all of those parcels are burdened with public easements for street purposes and, therefore, none of the parcels has more than a nominal value. (*Matter of Adams*, 141 N. Y. 297; *Lord* v. *Atkins*, 138 N. Y. 184; *Bissel* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Taylor* v. *Hopper*, 62 N. Y. 649; *Wyman* v. *Mayor, etc.*, 11 Wend. 487; *People* v. *Loehfelm*, 102 N. Y. 1; *Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459; *City of Cohoes* v. *D. & H. R. R. Co.*, 134 N. Y. 397; *Matter of Hunter*, 163 N. Y. 542; *Cook* v. *Harris*, 61 N. Y. 448.) Assuming, without admitting, that parcels damage Nos. 4, 5, 5-a, 7 and 7-a are not subject to public easements for street purposes, nevertheless, all of those parcels are burdened with private easements of access or right of way. (*Reis* v. *City of New York*, 188 N. Y. 58; *Taylor* v. *Hopper*, 62 N. Y. 649; *Matter of Hoyt*, 162 App. Div. 469; 213 N. Y. 651; *Matter of Fox Street*, 54 App. Div. 479.)

POUND, J. This is a proceeding for the opening of East One Hundred and Seventy-seventh street from Fort

Schuyler road to Long Island Sound in the borough of The Bronx. The city seeks to acquire the title in fee to the real property required.

The East One Hundred and Seventy-seventh Street Improvement Company, the predecessor in interest of appellant herein, appeared and claimed a substantial award for the taking by the city of damage parcels 4, 5, 5a, 7 and 7a, being part of the land in the bed of the street as the city proposed to open it. It offered evidence of title and value at a hearing before the commissioners on March 19, 1920. On August 10, 1920, while the condemnation proceedings were still pending, it submitted to the president of the borough of The Bronx a subdivision map of its property, including the portion of East One Hundred and Seventy-seventh street in question, for his approval and transmission to the board of estimate and apportionment under the provisions of chapter 513 of the Laws of 1916 (§ 1540 of the New York city charter), " in order that they may fully meet the requirements of said act prescribed for subdivision maps which are to be filed in the register's office." The communication accompanying the map further stated: " it is contemplated by the owners of this property to hold an auction sale of these lots in the very near future." The lines of East One Hundred and Seventy-seventh street as laid out on the map are identical with the lines of the street on the city's final map in this proceeding. The borough president approved the map and transmitted it to the board of estimate and apportionment. The chief engineer of the board, acting under authority of law and of the board, approved the map on September 11, 1920. On the face of the map filed by the claimant East One Hundred and Seventy-seventh street is marked with the words " (as now being legally opened)."

The commissioners herein made their report on December 26, 1922, awarding to claimant $87,496 damages for the taking of the damage parcels in question. On motion

for confirmation of the report it was held that as to these parcels a complete dedication and acceptance of the land for a public street had been accomplished by the filing and approval of the map. The Appellate Division affirmed the order of the Special Term which ordered the report to be returned to the commissioners for revision and correction so as to allow nominal damages only, but allowed an appeal to this court on certified questions for the purpose of obtaining a determination of the questions of law presented.

Real Property Law (Cons. Laws, ch. 50), section 334, provides as follows:

" Section 334. *Maps to be filed; penalty for non-filing.* It shall be the duty of every person or corporation who, as owner or agent, subdivides real property into lots, plots, blocks or sites, with or without streets, for the purpose of offering such lots, plots, blocks or sites for sale to the public, to cause a map thereof, together with a certificate of the surveyor or draftsman attached showing the date of the completion of the survey and of the making of the map and the name of the subdivision as stated by the owner, to be filed in the office of the county clerk or register of deeds of the county where the property is situated prior to the offering of any such lots, plots, blocks or sites for sale; and a duplicate copy of such map shall also be filed in the office of the city, town or village clerk where the property is situated before any such sale. All such maps must be printed or drawn upon tracing cloth, linen or canvas backed paper. All of such maps shall be placed and kept, by some suitable method, in consecutive order and shall be consecutively numbered in the order of their filing and shall be indexed under the intitial letters of all substantives in the title of the subdivision. A failure to file any such map as required by the provisions of this section shall subject the owner of such subdivision, or of the unsold lots therein, to a penalty to the people of the state of twenty-

[239 N. Y. 119]     Opinion, per POUND. J.     [Nov.,

five dollars for each and every lot therein sold and conveyed by or for such owner prior to the due filing of such map."

. Greater New York charter, section 1540, as amended by Laws of 1916, chapter 513, further provides:

. " Section 1540.  No map of the subdivision or platting of lands into streets, avenues or public places and blocks within the limits of the city of New York shall hereafter be received for filing in the office in which instruments affecting real property are required to be recorded in the county in which the land is situated unless such map shall have been approved and transmitted to the board of estimate and apportionment by the president of the borough in which the land shown on such map is situated and unless such map approved by the president of the borough has been also approved by the board of estimate and apportionment, or that board has failed to take action thereon as hereinafter provided.  The board of estimate and apportionment may in its discretion authorize its chief engineer to consider and approve or disapprove such map in its behalf, but if such map is disapproved by the chief engineer an appeal may be taken at any time to the board and its action on such appeal shall be final.  Unless such map is either approved or disapproved by the board of estimate and apportionment or its chief engineer within twenty-one days of its reception in the office of the secretary of the board, approved by the president of the borough, the secretary of the board shall certify such fact in writing upon such map and such map shall be received for record without such approval.  Every such map shall be prepared, approved and certified in quadruplicate and shall be filed as follows:  one copy thereof, as above provided, in the office in which conveyances of real estate are required to be recorded in the county in which the land shown thereon is situated; one copy thereof in the office of the corporation counsel; and one copy thereof in the office of

the president of the borough in which the land shown on the map is situated, and one copy thereof in the office of the secretary of the board of estimate and apportionment. No street, avenue, highway or public place, the layout of which has not been approved, as provided in this section, shall be deemed to have been accepted by the city of New York as a street, avenue, highway or public place, unless such street, avenue, highway or public place shall lie within the lines of a street, avenue, highway or public place shown upon the duly adopted and filed final maps of the city of New York."

Prior to the amendment of 1916 the last sentence of section 1540 reads as follows: " upon such approval (by the board of estimate and apportionment) the title of the owner or owners of the land to all streets, avenues and public places designated on the map or plat shall immediately vest in fee, clear of all encumbrances in the City of New York in trust for the designated public. use." (L. 1901, ch. 466, re-enacting L. 1897, ch. 378.)

The common-law rule governing the dedication of streets is well understood. It has been held:

" The dedication and acceptance are to be proved or disproved by the acts of the owner, and the circumstances under which the land has been used. Both are questions of intention. The owner's acts and declarations should be deliberate, unequivocal and decisive, manifesting a positive and unmistakable intention to permanently abandon his property to the specific public use. If they be equivocal or do not clearly and plainly indicate the intention to permanently abandon the property to the use of the public, they are insufficient to establish a case of dedication. In the case of a highway, the public must accept the dedication." (*Haldane* v. *Trustees of Village of Cold Spring*, 21 N. Y. 474, 477.)

Where the owner of land in a village lays out the same into lots and streets, makes and files a map or plat thereof, and sells and conveys lots by the map, bounded

upon the streets as delineated thereon, this does not necessarily make them public highways; the acts and declarations of the party must be unmistakable in their purpose, and decisive in their character, showing an intent to dedicate the land, absolutely and irrevocably to public use; and there must also be an acceptance and formal opening by the public authorities, or a user. (*Niagara F. Susp. Bridge Co.* v. *Bachman*, 66 N. Y. 261.)

But the city contends that under the statutory provisions quoted the lands in question have been irrevocably devoted to street purposes and that the intention of the parties may not be inquired into; that the filing of the map conclusively and as matter of law negatives the intention to claim damages for the taking of property in the condemnation proceedings; that the landowner in its haste to sell lots on the proposed streets has forfeited the right to damages which it was contemporaneously asserting before the commissioners.

Nothing contained in the statutes quoted as now in force expressly provides that the filing of the map and the approval thereof shall constitute a dedication of the streets shown thereon to public use. To sustain the position of the city it must appear as matter of law either that under the provisions of the city charter the filing of a sales map was an offer of dedication of such streets to public use or that the owner by its acts actually intended so to dedicate them. The city cannot prevail on either contention.

Prior to the amendment of 1916 a condition was attached to the filing of the map. If approved by the board of estimate and apportionment the title of the owner of the land to all streets dedicated thereon vested in the city of New York in fee in trust for the designated public uses. Under the present statute, before the map may be received for filing in the office in which instruments affecting real property are required to be recorded so that lots may be lawfully offered for sale by reference

thereto under Real Property Law (§ 334), it must be presented to the board of estimate and apportionment for approval, approved by the president of the borough, and thereupon the board may (a) approve, (b) disapprove, (c) take no action thereon.  If the board disapproves it may not be filed, but if approved or if no action is taken thereon the map when properly certified shall be received for record.  If the layout has not been approved, the streets shall not be "deemed to have been accepted" unless they lie within the lines of streets shown upon the duly adopted and filed final maps of the city; but this is mere matter of negation which may have been included by way of caution.  It does not follow that the converse of the proposition is also true.  If the landowner actually physically opens and works the proposed streets it may well be that offer and acceptance will be implied when the map has been approved and will not be implied when it has not been approved unless the land lies within the lines of a city street as laid out on the city maps, but that question is not before us.  East One Hundred and Seventy-seventh street has not been opened for travel by being graded and worked.  It exists on paper only.  At common law the filing of such a map does not in itself constitute an offer to dedicate to public uses the streets shown on the map.  If there were nothing else to the case the filing of the map would not be an offer of dedication.

The purpose of the legislation must, therefore, be considered.  Under Real Property Law (§ 334) the filing of a sales map is made compulsory but it is obvious that filing under that section constitutes neither a dedication nor an offer of dedication.  Its purpose is merely to make a public record of the map for the sake of definiteness and certainty.  Nor has section 1540 of the city charter gone further than to delimit the right of the owner to file this map before making conveyances by

reference thereto. Approval by the board of estimate and apportionment means merely " to pass a favorable opinion thereon." Acceptance indicates a meeting of the minds, an agreeing to an offer. Acceptance does not follow from mere approval. Approval is proper when the layout of the land is in general harmony with the scheme of the city as to width of streets, connection with public highways and the like, so that if the plotted streets are offered to the city in the future they may be accepted as a part of the street system of the city. The provision that if the map merely follows the lines of proposed city streets no approval is necessary, gives weight to this interpretation.

The property owner in this proceeding was, at the time of filing the map, engaged in giving proof of its claim for a substantial award; the map was filed in order that lots might be sold on the proposed streets without incurring a penalty under Real Property Law (§ 334); the map expressly stated that East One Hundred and Seventy-seventh street was laid out thereon " as now being legally opened." Its primary purpose was to acquaint prospective purchasers with the projected opening of the street. If the map could be filed without prejudice to the claimant's demand for substantial damages; without the intention conclusively implied of making an offer of dedication, no dedication has resulted. Only if the acts of the parties amount to a dedication in law; if dedication is a legal prerequisite to the right to file an approved map, can the contrary be held.

In the absence of an express prohibition against the approval of a sales map which does not dedicate the streets shown thereon to public uses, the question of intention remains in the case. To hold, by giving a significance to its acts contrary to its real intention, that the landowner has forfeited its claim to compensation by filing its map would be to work injustice and to read into the statute by implication what should be plainly

stated so that property owners may not lose their rights by doubtful constructions and may not be surprised into an involuntary dedication of their property.

But it is contended that claimant has created private easements in East One Hundred and Seventy-seventh street as laid out on the map and that it is, therefore, entitled to a nominal award only. It has conveyed lots which front on other intersecting streets shown on its map, which do not abut upon East One Hundred and Seventy-seventh street, are not contiguous thereto and do not require East One Hundred and Seventy-seventh street for access or egress. The easements acquired by such grantees do not extend to every street shown on the map but only over such streets as afford access to the city system of public streets. The implied easements are of necessary access and egress merely. The grantees are not to be shut off from the public streets. (*Reis* v. *City of New York*, 188 N. Y. 58.) East One Hundred and Seventy-seventh street as laid out on the map is not necessary for such access and egress. It might be closed without substantial damage to such lot owners so long as the intersecting streets remained open. They are not entitled to have East One Hundred and Seventy-seventh street kept open for their use for its entire length over claimant's land. The right of purchasers of lots fronting on intersecting streets to cross the proposed East One Hundred and Seventy-seventh street in reaching the city streets may reduce the value of the land taken, but not so substantially as to make the award nominal in amount.

Orders reversed and proceeding remitted to the Special Term for further action, with costs to appellant in all courts. First question certified answered in the negative, the fourth in the affirmative and the other questions not answered.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Orders reversed, etc.