JOHN T. CHATTAWAY, JR., ET AL. *v.* CITY OF NEW LONDON

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued January 7—decided February 11, 1947

*Francis F. McGuire,* with whom was *Morgan K. McGuire,* for the appellants (plaintiffs).

*Edmund J. Eshenfelder,* for the appellee (defendant).

DICKENSON, J. This is an action for a declaratory judgment determining whether the fee in certain land is in the defendant for street purposes and whether it has the duty to open the land for travel or use. The plaintiffs have appealed from a judgment for the defendant. Their claim, in substance, is that they have dedicated their land for street

purposes in compliance with the requirements of the defendant's charter and that the dedication was accepted by the defendant city, which now refuses to develop the streets.

With such corrections of the finding as the plaintiffs are entitled to, the facts are as follows: The defendant is a municipal corporation of the state of Connecticut. The plaintiffs are the owners of land located in the city and described on a map entitled " 'Riggs Estate' Revised Plan of Sub-division for Dr. E. O. Winship, New London, Conn., 1929," and recorded in the town clerk's office in New London. In 1929 Winship owned land located in the southern part of the city of New London and known as the Riggs estate. He undertook to develop this by dividing it into building lots and streets and by conveying the latter to the defendant city. The plaintiffs are successors in title to Winship as to the lots owned by them in the development.

Section 93 of the charter of the city of New London (18 Spec. Laws 739), under the head of "City Planning Board," reads in part as follows: "Any proprietor of lots or grounds within the city, who subdivides or lays them out for sale, shall cause to be made an accurate map or plat of such subdivision describing with certainty all grounds laid out or granted for streets . . . or other public uses . . . . Such map or plat shall be described by the proprietor . . . in writing, acknowledged before an officer authorized to take acknowledgment of deeds, who shall certify the acknowledgment of the instrument, and be recorded in the office of the town clerk. The map or plat so recorded shall thereupon be sufficient conveyance to vest in the city, when accepted by the city, the fee or easement for street

purposes in the parcel or parcels of land designated or intended for streets . . . or other public uses, to be held in the corporate name in trust to and for the uses and purposes in the instrument set forth, expressed, designated or intended."

Section 94 of the charter (18 Spec. Laws 740) reads in part as follows: "The council shall by ordinance provide regulations governing the platting of all lands so as to require all streets and alleys to be of proper width, grade and location . . . and otherwise to conform with the regulations as to the plan of the city . . . . When any person plats any land within the corporate limits of the city, as hereinbefore provided, the platting officer shall, if such plats are in accordance with the rules prescribed by the council, endorse his written approval thereon. No plat subdividing lands within the corporate limits shall be entitled to record in the office of the town clerk without such written approval endorsed thereon." Section 95 of the charter (18 Spec. Laws 740) reads in part as follows: "No streets or alleys . . . except those laid down on a plat bearing the approval of the platting officer as hereinbefore provided, shall subsequently in any way be accepted as public streets, alleys . . . nor shall any public funds be expended in the repair of improvement of any such street, alley . . . laid out and not on such plat."

At the time Winship subdivided his property there was in effect in the city of New London an ordinance, adopted February 19, 1923, which reads in part as follows: "1. No street, alley, way or walk for public use shall be laid out, constructed or opened for travel or use, except by and with the express consent of the Council of the City of New Lon-

don; nor unless the grade, lay-out, location and width of the same have been approved by vote of the Council of the City. 2. No street for public use shall be laid out, constructed or opened for travel, unless the same be at least three rods in width and curbs have been laid to the satisfaction of the Council. . . . 9. No plat shall be approved by the City Engineer unless the same is in accordance with the foregoing rules and with the provisions of this ordinance, nor until the lay-out of the streets, alleys, ways, walks, parks and lots shown on said plan have been approved by the Council, nor until the City Engineer shall have endorsed his written approval on said plan; nor until proper deeds of conveyance fully executed, conveying title, to said streets, alleys, ways, walks, parks and other land for public use shall have been delivered to the City by the person or persons platting said land, or in any way interested therein, and approved by the Council and the Director of Law. Said deed shall be accompanied by a waiver of all claims for damages occasioned by the establishment of grades as approved and the present or future alteration of the surface of any portion of streets, alleys, ways and walks, conveyed to conform to the grade so established. The fee for filing such map or plat shall be paid by the person platting such land. 10. No street or way laid out or opened except in compliance with the provisions of this ordinance shall become a public highway, nor shall any improvement or repairs be made thereon by said City . . . ."

On November 5, 1929, Winship filed in the New London town clerk's office a map which fully complied with all the requirements of § 93 of the charter and with the provisions of the ordinance in so far

as they related to such maps. The map showed the Riggs estate divided into lots and three proposed streets designated as Riggs Place, Danby Road and Winship Place, and on profiles showed the existing grade and the proposed grade of those streets. The map also had on it the indorsement of the city engineer, who under the charter was also the chief engineer of the planning board and the platting officer, in these words: "Approved for street grades and property layout." It also had on it a legend, "Approved by the planning board, Oct. 30th, 1929," signed by the secretary of the board. In addition, Winship executed and had recorded a warranty deed, dated November 4, 1929, conveying to the city "for public use for the purposes of public highways" the three strips of land in question. The deed contained the provision that in accordance with an ordinance of the city of New London the grantor waived all claims for damages occasioned by the establishment of grades and the present and future alteration of the surface of the streets to conform to the grade so established. It was "approved as to form and correctness" by the city's then director of law.

At a meeting of the city council on November 4, 1929, a communication was received from the planning board stating that it had approved the revised plan of the subdivision of the Riggs estate with the profile of the proposed streets, Riggs Place, Danby Road and Winship Place, and recommending to the council the acceptance of the plan "when the requirements of an Ordinance Relative to the Layout of Streets, Platting of Land, etc., have been complied with." Evidently as a result of this report the council adopted two votes. One was "that the Council hereby approves of the revised plan of the lay-

out of the Riggs property." The other was "that the conveyance from E. O. Winship to the City of New London of the tracts of land called Riggs Place, Danby Road and Winship Court, as shown on plan of Riggs Estate revised plan of subdivision for Dr. E. O. Winship, as approved by the Planning Board be and the same is hereby approved. Nothing herein shall be construed as an acceptance of said streets as public highways of the City of New London until the provisions of the Ordinances Relating to the layout of Streets and Platting of lands have been complied with." The ordinance thus referred to was the one adopted February 19, 1923. Since the adoption of the above votes of the council on November 4, 1929, nothing has been done by anyone toward the acceptance of the proposed streets and none of the streets has ever been constructed, improved or opened for traffic. The land has never been brought to the grade indicated on the profiles on the map, either by Winship or by any of his successors in title. No curbs have been laid in the streets. The court inspected the premises and found that the land remains in its natural state, being rough, hilly, covered with brush and inaccessible. The council has taken no further action toward accepting the strips of land as public highways. Commencing with the grand list of 1930 and continuing to the present time, the assessors of the defendant city have not assessed for tax purposes against any person any of the land designated as Riggs Place, Danby Road and Winship Place on said map. The plaintiffs petitioned the council to open the three streets to public travel, but the petition was denied on August 20, 1945.

The trial court reached the conclusions on these

facts that acceptance of the strips of land as public highways by the defendant could only be by vote of the council; that the council voted to accept the plan of subdivision only when the requirements of the ordinance relative to the layout of streets and platting of land had been complied with; that the ordinance required a suitable grade and curbs to be made by the owners of the property before the acceptance became complete; and that this work had never been done and therefore the proposed streets had never been accepted or the statutory dedication completed. Further conclusions of the trial court were that there was no authority in the city to accept the deed of conveyance of the streets; that the council did not accept it and the deed was nugatory; that there is nothing in the deed that imposes upon the defendant the duty of grading and curbing the proposed streets; and that the recording of the map did not estop the defendant to deny a dedication. The claim of the plaintiffs, in substance, is that the provisions of § 93 of the charter determine the method of statutory dedication, that the map was filed in accordance with the provisions of this section, that when the council by its vote of November 4, 1929, "approved" the plan it accepted the dedication and that the recording of the map and the removal of the streets therein from tax assessment lists of the defendant support their contention of title in the defendant.

*Bay* v. *United States Fidelity & Guaranty Co.,* 24 Ohio App. 73, 156 N. E. 227, upon which the plaintiffs rely, holds that the approval by city officials and recording of such a map or plat constitute acceptance and convey title to the city. The case is similar factually to the instant one but has dis-

tinguishing features. The mayor and clerk of the city were authorized to approve the plat and did so and the city acknowledged the dedication by bringing an action against a contractor who had defaulted in work on streets so dedicated. The rule supported by the better reason is that even in case of a statutory dedication an acceptance should be necessary in order to make the municipality liable to maintain streets and for injuries from defects therein. 4 McQuillin, Municipal Corporations (2d Ed.) § 1701; *Nimpfer* v. *Fox Lake,* 334 Ill. 46, 50, 165 N.E. 143; *Matter of City of New York (E. 177th St.),* 239 N.Y. 119, 128, 145 N.E. 903; *Wayne County* v. *Miller,* 31 Mich. 447, 450; *Ramstad* v. *Carr,* 31 N.D. 504, 527, 154 N.W. 195. Where a municipal board is given authority to accept land for a highway, we have said: "The creation of a highway affects too many rights . . . and imposes upon the town too heavy a responsibility . . . to permit it to be done . . . without formal action, duly recorded." *Stratford* v. *Fidelity & Casualty Co.,* 106 Conn. 34, 37, 137 A. 13.

Where the legislature has established the conditions necessary to constitute a dedication of land for public purposes, however, the statutory provisions are controlling. 4 McQuillin, op. cit., § 1665; and see *Scoville* v. *Columbia,* 86 Conn. 568, 570, 86 A. 85. It is apparent from a careful reading of § 93 of the defendant's charter that the recording of the plat did not, in itself, as claimed by the plaintiffs, constitute a conveyance of the land described therein to the defendant city. The provision is that the "map or plat so recorded shall thereupon be sufficient conveyance to vest in the city, when accepted by the city, the fee or easement for street

purposes." The map must be recorded before it is accepted, hence the recording cannot be the acceptance. Under the provisions of § 94 the map may not be recorded without the written approval of the city's platting officer indorsed upon it and § 95 provides that no streets shall subsequently in any way be accepted as public streets except those in a plat bearing the approval of the platting officer. The obvious purport of these provisions is that there must be a properly drawn and executed plat of land approved by the platting officer and recorded in the town clerk's office before the city can act upon the dedication. By the charter provision the recording simply completes the offer of the land to the city for public purposes and the acceptance, patently, is to be by a separate and subsequent act.

While generally acceptance may be express or implied from the acts of municipal officers (4 McQuillin, op. cit., § 1704), the action of the council, substantially contemporaneous with the recording of the plat, leaves no room for acceptance by implication. The ordinance was evidently intended to comply with and carry out the mandate in the charter that the council should adopt regulations governing the platting of land so that all streets and alleys should be of proper width, grade and location and should otherwise conform to the city plan; but the council, instead of fixing certain standards for the guidance of the platting officer in determining whether or not to indorse his approval on the map, required that before he gave it such approval as would entitle it to be filed of record the council should itself have approved the layout of the streets, parks and lots shown upon it. The action taken by the council was an approval of the map as

regards the features specified in the ordinance, upon the basis of which the platting officer, that is, the city engineer, could indorse it, if it otherwise complied with the provisions of the ordinance, and so entitle it to be filed of record. The approval of the "conveyance" by Winship obviously meant no more than a formal acknowledgment that the deeds corresponded to the requirements of the ordinance. That no more was intended by the council appears definitely in the provision attached to the second vote, that nothing in it should be construed as an acceptance of the streets as public highways until the provisions of the ordinance had been complied with. If there was any doubt as to the intention of the council, the minutes of the meeting at which the votes were taken, a copy of which is made a part of the finding, make it clear that it never intended to do more than approve the map and deed as a sufficient offer of the land for street purposes which, upon a subsequent acceptance, would constitute a dedication. This is the equivalent of a nonacceptance of the plan under the existing circumstances and an indication that further action by the council is required when and if the provisions of the ordinance are complied with. Intention is a question of fact. The conclusion of the trial court is amply supported and is final. *McDermott* v. *McDermott,* 97 Conn. 31, 34, 115 A. 638.

The trial court held as to the deed of conveyance accompanying the map that there was no authority in the city to accept it, that it was not accepted, that as a conveyance of title it was nugatory and that there was nothing in it to impose a duty upon the city of grading and curbing the proposed streets. The deed was evidently filed to comply with the re-

quirement in § 9 of the ordinance that, before the city engineer could indorse his approval upon a map, proper deeds conveying title to lands platted for public uses should be "delivered to the City" by the person platting the land or interested therein "and approved by the Council and the Director of Law." The provision of § 93 of the charter under which a map, if accepted by the city, was sufficient to convey some sort of title to the city left very indefinite the nature of that title. The purpose of the requirement in the ordinance that a deed be delivered to the city, aside from the provision for a waiver of future claims for damages, was presumably that the city might be sure of the rights it would acquire upon acceptance of land platted for streets and other public purposes; and the approval of such a deed was an acknowledgment of its sufficiency in form and content as a basis for a dedication of land completed by its acceptance. A deed, in order to pass title to land, must not only be delivered by the grantor but also be accepted by the grantee. *Gagner* v. *Petrauskas*, 112 Conn. 307, 310, 152 A. 145. The votes of the council fell far short of constituting an acceptance of the deed as a conveyance of any title to the land. The trial court was correct in so concluding and in holding that the deed was nugatory, and that its approval did not impose any duty upon the city to open or improve the land described in it for street purposes. We have no need to consider the court's further conclusion that the city had no authority in any event to accept such a deed as that offered.

The plaintiffs claim that the recording of the map and deed estopped the city from denying that the land had been accepted by it. The trial court has

found that the deed was recorded by Winship, and this is a reasonable inference from the evidence. There is no basis upon which the city could be estopped from asserting that there had been no such conveyance of the land to it as imposed a duty upon it to open or improve it for street purposes.

There is no error.

In this opinion the other judges concurred.