THEODORE P. SARGENT et al., Plaintiffs, *v.* BRUNNER HOUSING CORP. et al., Defendants.

Supreme Court, Special Term, Suffolk County, January 5, 1967.

*Burns & Block* for plaintiffs. *Morris Permut, John J. Ceparno, David K. Kadane* and *Martin B. Ashare* for defendants.

JACK STANISLAW, J. The several plaintiffs own property along Laurel Drive in Stony Brook. In 1963 defendant Brunner Housing Corp. acted with reference to Laurel Drive to: change its grade, put in curbs and other incumbrances, offer to dedicate most of it to the Town of Brookhaven as a public highway, and grant easements to the Long Island Lighting Company for poles and the like. Plaintiffs claim an easement over Laurel Drive which they would now validate and enforce and use as a basis for obtaining damages from defendant Brunner for the activities noted.

The whole of the property with which we are concerned here was singly owned in 1903. That year the northerly part was

sold by a deed which referred to a 33-foot right of way also conveyed to the then grantees throughout the entire length of the property. A year later, in 1904, the southerly portion of the property was sold subject to that same right of way. The parties agree that right of way is now known as Laurel Drive. Plaintiffs are the owners of what was that northerly part of the property conveyed in 1903, and defendant owns what was originally the southerly parcel conveyed in 1904.

Aside from various conveyances made since the first one in 1903, two other significant (so far as we are concerned) transactions affecting this property and the right of way have taken place in the past 63 years. In 1907 a map was filed with the Suffolk County Clerk covering the southerly portion of the tract (defendant's), upon which the right of way appeared designated at Soundview Avenue. (Soundview Avenue is conceded to be Laurel Drive.) In 1927 another map was filed with the County Clerk again showing the Laurel Drive right of way. This map covered the northerly part of the parent tract. At the outset it is necessary to calculate the effect of these filings, for they raise a serious issue regarding the possible open offer of dedication of Laurel Drive. That is, if in fact Laurel Drive had been actually dedicated or offered for dedication as a public highway 40 or more years ago, plaintiffs are left with nothing to complain of now.

The 1907 filing, if it constituted a dedication or offer in any way, was effectuated with then recent cognizance of the terms of the deed to the filer, the grantee named in the 1904 deed. This deed specifically noted the rights of use conveyed the year before to the owners of the northerly parcel. At best, it is questionable that the 1907 fee owner would offer to dedicate the easement out from under the easement grantees of three years preceding. In any event, the filing alone is demonstrative of no more than an offer to dedicate.

Traditionally, a dedication to public use will be found only upon an offer sufficiently decisive to manifest an absolute and irrevocable intent to do so, which offer is then or thereafter accepted by public authority (*Matter of City of New York* [*East 177th St.*], 239 N. Y. 119). There is little if anything to indicate any intent, by the filing of the 1907 map alone, to dedicate Laurel Drive. Certainly no acceptance is shown. Brunner theorizes that the filing by the fee owner of a map showing lots and streets, one of which was Laurel Drive, without a reservation of street rights, followed by conveyances keyed to mapped lots and streets, adds up to an intent to dedicate. Nor was this putative offer revoked. Although the acts of the fee

owner-filer are not in dispute, there is the residual issue regarding the intent against which these acts must be considered. It is one thing to evaluate this intent based upon an awareness of contemporary methods of land development and quite another to do it by projecting 60 years back. We have great difficulty in perceiving an absolute intent to dedicate then, assuming (as we do) an essential lack of real benefit at that time in so doing. We are talking about a suggested dedication uncomplicated by such positive benefits and possible virtues as pavement, sewers, snow removal, electricity, street cleaning and the like. On the other hand conveyancing, then as now, was simplified by the filed map. A grantee would possibly have a private easement in the mapped street, and 60 years ago that would appear to be sufficient. But we can find no offer in the 1907 filing, for we find no absolute and irrevocable intent to dedicate (*Matter of City of New York [East 177th St.]*, 239 N. Y. 119, *supra*; *Nichols Copper Co. v. Connolly*, 208 App. Div. 667, affd. 240 N. Y. 596; *Goulding v. Town of Tonawanda*, 282 App. Div. 321).

This brings us to 1927 and the filing of a map by plaintiffs' predecessor in title, again delineating Laurel Drive. This is claimed by Brunner to have been a completed dedication. The actuality of dedication is again the focal point of our inquiry, no less so than 20 years earlier. A dedication by plaintiffs' predecessors would serve to firmly establish Brunner's position. From a practical standpoint the legal proposition to be applied is essentially the same as utilized with regard to the prior filing. If the 1907 filing resulted in opening Laurel Drive as a public road, plaintiffs' private easement would have merged in it and thus be extinguished (see *Wells & Riv. Holding Corp. v. Otis Elevator Co.*, 7 Misc 2d 671, affd. 5 A D 2d 883).

By 1927 the Real Property Law (present §§ 334 and 335) mandated the filing of a map if one desired to sell property by lot number. This apparently was at least the partial objective of plaintiffs' predecessor (as probably it was of defendant's predecessor) and indeed sales by lot number to some of the plaintiffs did take place as of 1940. One of the problems in discovering an intent requisite to dedication in the 1927 filing is that the filer did not of course own the fee in Laurel Drive. At best, all he could have had was an intent to dedicate his easement. Again searching the background, it is important to bear in mind that the map submitted in 1927 covered property associated with that upon which a map had been filed 20 years before, including Laurel Drive. Laurel Drive was then one thing which the two maps had in common. If in 1927 the filer picked up Laurel Drive on his map in the process of subdividing

property abutting it, that demonstrates as much a then practical and realistic acceptance of the already burdened right of way in common as an intent to surrender existing rights therein. It is not easy to embrace Brunner's contention that the owner of the easement displayed that right of way on the second map in order to convert it to public use but only so far as he might. Possessing a right in Laurel Drive anyway, there would seem to be no reason to omit it on the 1927 map anyway.

When these plaintiffs first got a deed, it contained a statement by which the grantor reserved the right to use or permit use of the streets or rights of way shown on the 1927 map for maintenance or operation of railways, trolley lines, gas mains, conduits, etc., '' provided that they shall be so maintained as not to materially interfere with the use of said streets or right of ways.'' This reservation was made binding until January 1, 1945. A concession must be made here to Brunner's hypothesis that by the reservation the grantor did probably have the thought in mind that Laurel Drive was to be (or might already have been) dedicated for public use. However, in thus reserving specified rights what was or could be accomplished? The grantor did not have the objective ability to exercise most of those rights. More likely the grantor retained to himself, as he in fact stated, the right to permit certain public-type uses for a limited time. To some extent this reservation also reflects upon 1927 intent, because an effective offer of dedication then would obviate any necessity for a further reservation in 1940.

Finally, throughout this history of mapping, subdividing, and conveying there is no indication whatsoever that Laurel Drive was ever accepted or somehow similarly acted upon by municipal governmental authority as devoted to public purposes (cf. *People* v. *Brooklyn & Queens Tr. Corp.*, 273 N. Y. 394; *Fieder* v. *Terstiege*, 56 N. Y. S. 2d 837, affd. 273 App. Div. 982; *Carman* v. *Hewitt*, 105 N. Y. S. 2d 239, mod. on other grounds 280 App. Div. 866, affd. 305 N. Y. 718; see, also, *Petrie* v. *City of Rochester*, 206 Misc. 96). We are unavoidably drawn to the conclusion that Laurel Drive is not now nor was it ever a public thorofare, for it was not intentionally offered, much less accepted, as such.

Ten causes of action are spelled out in the complaint. The first alleges plaintiffs' private easement, Brunner's offer of dedication and trespass over which plaintiffs would have declared and enjoin, respectively. The second cause, alternative to the first, need not be probed by reason of the preceding cause and our discussion, *supra*. Then, except for the fourth cause of action, which was withdrawn, the remainder of the complaint asks removal of obstructions in the right of way, certain restora-

tion thereof, plus damages flowing from Brunner's activities on and about Laurel Drive. These activities consisted primarily of changing the grade and obstructing certain parts of it. Further refining the effects of defendant's operations, it is claimed that some of plaintiffs' trees, shrubbery, etc., were destroyed, that certain other personal property was demolished, and that, as to plaintiffs Sargent, waters were caused to run off to and accumulate on their property. The eighth cause asks removal of the poles and wires erected by the defendant LILCO with the permission of Brunner. If they must be removed, Brunner concedes its responsibility to the lighting company to bear the cost of relocating them. In any event, however, this does not apply to poles put in pursuant to an easement granted by one of the plaintiffs in 1941.

We have some idea of the respective present position of the parties vis-a-vis the dedication-easement dichotomy. The next logical consideration is of the nature and degree of relief to which plaintiffs may be entitled. Injunctive relief appears warranted as to some of defendant's acts or proposed acts, but perhaps not as to all of them. For instance, an injunction is sought to compel the removal of obstructions placed in the right of way by defendant, such as curbs, a parking area and a private driveway, and by others acting upon defendant's permission, to wit, the lighting company poles. To the same effect, injunctive restoration of one of the properties is asked in order to prevent water run-off and accumulation, as well as to prevent an obstruction of an easement fronting on Laurel Drive.

In weighing any application of equitable relief here it is necessary to bear in mind the general background of a case-by-case resolution of similar situations in the past. The particular factual framework acts as a weighty and influential guide. The same might be said of the availability of monetary damages in substitution of equitable relief.

On the one hand, plaintiffs had prior notice of some of the steps Brunner was going to take toward an ultimate dedication of Laurel Drive. Later they were asked to remove certain obstructions as Brunner proceeded to rearrange Laurel Drive to comply with certain prededication conditions imposed upon his application by the town. It was only after ignoring this information and subsequent and related requests by defendant that plaintiffs acted and then just after defendant had started to do much of the damage complained of here. The rights of the parties obviously were not clear then or even perhaps just up to a few paragraphs back. We have just reflected upon issues involving 40- to 60-year-old intent, the resolution of which has

(perhaps) finally fixed rights and nonrights of this roadway. The legal basis and result were debatable and, we think, in good faith. Defendant's acts lose much of their aura of maliciousness with this in mind, as does plaintiffs' of righteousness. (*Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22; *Maspeth Branch Realty* v. *Waldbaum, Inc.*, 20 A D 2d 896; *Koff* v. *Frank*, 22 Misc 2d 551; *Syracuse Supply Co.* v. *Railway Express Agency*, 45 Misc 2d 1000; 17 N. Y. Jur., Easements and Licenses, §§ 167–172.) It is to be noted, though, that the factors mitigating defendant's acts also operate to eliminate its claim of estoppel against plaintiffs.

Some restorative relief, to begin with, is both palatable under the circumstances and in line with the rights of the plaintiffs here established and clarified. Plaintiffs shall have judgment as prayed in the third, eighth, and ninth (as to restoration) causes of action. The defendant town may not accept the dedication of Laurel Drive, because plaintiffs are declared to have their easement of 33 feet therein as set forth in the first cause of action. The sixth and seventh causes are dismissed on the basis of a 1959 agreement between the parties or their predecessors, binding on them, and so leaving plaintiffs without cause to complain as set forth. On the fifth and tenth causes, the affected plaintiffs are awarded damages in the gross sums of $12,000 and $6,000, respectively. In any and all other respects the actions and counteractions are dismissed.